This is a contest over a fund, amounting to $2,759.67, held by the receivers of the Union Indemnity Company, in an account called "Cash Collateral Account." The fund is the remainder of the sum of $6,850.67 which was taken over by the Union Indemnity Company when the company took over all of the assets and assumed the obligations of the New York Indemnity Company. Only $1,557.55 of the fund is in contest. The contest arose in this way: Michael H. Smith, who is a contractor, entered into two contracts with the Calatex Oil Gas Company, Inc., for the drilling of two oil wells. In each instance Smith gave a bond, with the New York Indemnity Company as surety, for the faithful performance of his contract and the prompt payment of all subcontractors, workmen and furnishers of material. One of the bonds was for $9,000, and the other was for $5,500. When Smith had completed his work, the Calatex Oil *Page 243 
Gas Company owed him a balance of $6,850.57; but several furnishers of material — eight of them — had recorded their claims, amounting to $15,000 or more, and were claiming liens on the property. The New York Indemnity Company, therefore, availing itself of its right under an indemnity bond which Smith had given, employed a local law firm to protect the company against liability for these claims for materials furnished for the drilling of the wells. With the approval of Smith, the firm of Blanchard, Goldstein, Walker O'Quin was employed. Mr. O'Quin, a member of the firm, with the adjuster for the New York Indemnity Company, conferred with Smith, and he consented that Mr. O'Quin should ask the Calatex Oil Gas Company to pay over the $6,850.57 to the New York Indemnity Company, pending an adjustment of the claims which were recorded against Smith as contractor and the Calatex Oil Gas Company as owner of the wells. O'Quin succeeded in having the Calatex Oil Gas Company turn over the $6,850.57 to the New York Indemnity Company; and thereafter a concursus proceeding was instituted in the district court in Caddo parish, in order to determine the liability of Smith and the New York Indemnity Company for the claims which the materialmen had recorded. The case is reported as Calatex Oil 
Gas Co. v. Smith et al., 175 La. 678, 144 So. 243. At the end of the litigation it was found that the valid liens among the recorded claims did not exhaust the fund of $6,850.57 in the hands of the New York Indemnity Company, but left a balance *Page 244 
of $2,759.67. Meanwhile the Union Indemnity Company had taken over the affairs of the New York Indemnity Company and held the fund subject to the conditions under which the New York Indemnity Company had held it. Thereafter, Blanchard, Goldstein, Walker 
O'Quin sent their bill to the Union Indemnity Company for $1,557.55, which included a fee of $1,500 for professional services rendered in protecting the New York Indemnity Company (and in turn the Union Indemnity Company) as surety on Smith's bond, and included $35.05 traveling expenses in connection with the litigation, and $22.50 for the cost of printing briefs. After a delay of two months, the Union Indemnity Company sent its bank check to Blanchard, Goldstein, Walker O'Quin, for the $1,557.55; but a few days later, and before the check was presented to the bank for payment, the Union Indemnity Company was placed in the hands of receivers; hence the check was not paid. Thereafter, Michael H. Smith proceeded by way of a rule upon the receivers to compel them to pay over to him the $2,759.67; and Blanchard, Goldstein, Walker O'Quin proceeded in the same way to compel the receivers to first pay them the $1,557.55, for which the check had been issued. The receivers replied that they were only stakeholders, and that the contest was between Smith and the firm of Blanchard, Goldstein, Walker 
O'Quin. In fact, it appears that the contest is mainly, if not entirely, between the firm of Blanchard, Goldstein, Walker 
O'Quin and Smith's attorneys, who brought garnishment proceedings against him and seized his interest *Page 245 
in the fund. The judge who tried the case rejected the demand of the firm of Blanchard, Goldstein, Walker O'Quin, and ordered the receivers to pay the $2,759.67 to Michael H. Smith, on certain conditions specified in the court's decree. The firm of Blanchard, Goldstein, Walker O'Quin has appealed from the decision.
The judge who decided the case did not give written reasons for rejecting the demand of Blanchard, Goldstein, Walker O'Quin. It is said in the brief of the attorneys for Smith that the fee of Blanchard, Goldstein, Walker O'Quin is contested on the ground that the employment of this law firm was without Smith's consent or approval, and hence that the bonding company alone is responsible for the fee. In the alternative, Smith's attorneys contend that the fee charged by Blanchard, Goldstein, Walker 
O'Quin is excessive, and should not exceed $750.
The New York Indemnity Company had ample authority from Smith to employ the firm of Blanchard, Goldstein, Walker O'Quin, at Smith's expense. In applying to the New York Indemnity Company for the bond, in each instance, Smith signed a printed form of application called "Application for Contract Bond," and, in the application, Smith declared that, in consideration of the company's furnishing the bond, he would indemnify the company for any and all liability, costs and expenses, "including counsel and attorney's fees," which the company might sustain or incur by reason or in consequence of having executed the contract bond. *Page 246 
Smith's agreement to indemnify the company left no doubt about the company's right to employ attorneys at Smith's expense, for any purpose connected with the company's liability on the contract bond. For example, in the third paragraph of the "Application for Contract Bond" it is declared:
"3rd. That the undersigned [Smith] will at all times indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all liability, damages, loss, costs, charges and expenses of whatsoever kind or nature, includingcounsel and attorney's fees, which the company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond herein applied for, * * * and that we [meaning Smith] will pay over, reimburse and make good to the Company, its successors and assigns, all sums and amounts of money which the Company or its representatives shall pay, or cause to be paid, or become liable to pay, * * * on account of any liability, damage, costs, charges and expenses of whatsoever kind or nature, as well also in connection with any litigation, investigation, collecting any premium due or losses sustained or other matters connected herewith, including counsel and attorney's fees, such payment to be made to the Company as soon as it shall have become liable therefor, whether the Company shall have paid said sum or any part thereof or not. That, in any accounting which may be had between the undersigned [Smith] and the Company, the Company shall be entitled to credit for any and all disbursements in *Page 247 
and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether such liability, necessity, or expediency existed or not." (The italics are by the court.)
In the seventh paragraph of the instrument it is declared:
"7th. That, in the event the Company is required to reserve from its assets an amount to cover any contingent claim or claims under the bond herein applied for, by reason of * * * liens filed, * * * or for any other reason whatsoever, the undersigned [Smith] hereby covenants and agrees to immediately on demand deposit with the company, in current funds, an amount sufficient to cover any such contingent claim or claims, as a trust fund or collateral security, to be held by the Company as indemnity on the bond herein applied for, in addition to the indemnity afforded by this instrument; and if the Company is required to enforce performance of this covenant by action at law or in equity, the costs, charges and expenses, including counsel andattorney's fees, which it may thereby incur, shall be included in such action and paid by the undersigned." (The italics are by the court.)
The attorneys for Smith contend that there was no consideration given for this indemnifying bond which Smith gave to the New York Indemnity Company, and hence that the indemnifying bond is *Page 248 
not valid. The basis for the argument is that the date of the "Application for Contract Bond," in one instance, was two days later than the contract bond itself, and in the other instance was four days later than the bond which was applied for. The wording of the application for the contract bond, and of the bond itself, in each instance, and the reference to the contract, for the performance of which the bond was given, in each instance, indicates that the application for the contract bond, in each instance, was made out and signed before the contract bond itself was signed. For example, the application, which is on a printed form, begins thus: "To the New York Indemnity Company (hereinafter called the Company): The undersigned [meaning Michael H. Smith] desires the Company to execute bond," etc. In one instance the application was for a bond for $9,000 and in the other instance it was for a bond for $5,500, and in each instance the application was for a bond in favor of the Calatex Oil Gas Company, to secure the carrying out of the same contract that was referred to in the bond itself. Even if the indemnifying bond which Smith gave, in connection with his application for the contract bond, was signed by Smith after the contract bond was signed by the New York Indemnity Company, it would not follow that the indemnifying bond was given without any consideration. The consideration, as stated in the indemnifying bond, was the signing of the contract bond by the New York Indemnity Company. Even though the consideration for the indemnifying bond may have been *Page 249 
given in advance, it was none the less a valid consideration. The reason why the dating of the applications for the contract bonds subsequent to the dating of the bonds themselves was not explained on the trial of this case is that the matter was not mentioned or referred to either in the pleadings or on the trial of the case. Apparently, no one observed the discrepancy in the dates when the documents were offered in evidence; hence no objection was made to the introduction of the documents in evidence. In fact, in the petition filed for Smith in this proceeding, asking for the fund to be paid to him, he admitted that the balance [he said $6,855.90] which the Calatex Oil Gas Company owed him when the wells were completed was turned over to the New York Indemnity Company "in accordance with said contract," referring to his contract to indemnify the New York Indemnity Company. And, in the second paragraph of Smith's petition in this case, he alleged:
"That, * * * at the completion of said wells, there were outstanding liens and claims against said wells, and it was agreed in the said contracts by and between mover [meaning Smith] and the said New York Indemnity Company that mover [would] turn over to the said New York Indemnity Company, and said New York Indemnity Company would receive, all funds due to mover on said drilling contracts by the said Calatex Oil Gas Company for the benefit of mover; and the said New York Indemnity Company was to hold said sum and pay out of the same all judgments that might be *Page 250 
rendered against it by virtue of its having executed the said bonds, and the balance thereof, if any, to be returned to mover [Smith] or his heirs and assigns."
Aside from the written authority which the New York Indemnity Company had to employ attorneys at Smith's expense, the evidence shows that he approved and ratified the employment of the firm of Blanchard, Goldstein, Walker O'Quin. When Mr. O'Quin and the adjuster for the New York Indemnity Company called upon Smith, at a hotel in Shreveport, and requested him to authorize the Calatex Oil Gas Company to turn over to the indemnity company the balance of $6,850.57 which was due to him under the contracts, Mr. O'Quin read to Smith the third paragraph of his indemnifying bond, directing his attention particularly to his liability for the fees and expenses of the attorneys employed by the New York Indemnity Company; and Smith then executed a receipt to the Calatex Oil Gas Company and gave instructions to the company to turn over the money to the indemnity company. All of that was testified to by Mr. O'Quin, and it was agreed that his testimony should be considered corroborated by that of the adjuster; and the testimony was not contradicted by any one — not even by Smith. In fact, he did not testify at all in the case.
Our conclusion being that the New York Indemnity Company did have authority to employ the firm of Blanchard, Goldstein, Walker O'Quin, at Smith's expense, the only question is whether the fee which was charged is excessive, and, *Page 251 
if so, to what extent. Mr. O'Quin, who handled the matter for his firm, testified in detail as to the nature and extent of the services which were rendered and which he considered worth the fee which was charged. Another attorney, who was one of the attorneys for the Union Indemnity Company, and had direct information of the nature and extent of the services that were rendered by Blanchard, Goldstein, Walker O'Quin, also testified that in his opinion the services were worth the $1,500. One of the attorneys for Smith testified that the fee of Blanchard, Goldstein, Walker O'Quin should not exceed $600; and another of the attorneys for Smith testified that if Mr. O'Quin had handled the case on a contingent fee basis the fee of $1,500 would be "very fair," but that, as the case was not so handled, the fee of $1,500 was "a little high," and that "a reasonable fee would be $750 or $1,000." The record shows that, besides the concursus proceeding which was tried in Caddo parish and was appealed to this court, the firm of Blanchard, Goldstein, Walker O'Quin tried a similar suit in Texas, where one of the wells was located, and settled a large number of claims amicably, there and in Louisiana. The settlement of all of the claims, and the litigation in connection therewith, which demanded the attention of Mr. O'Quin very often, from time to time, extended over a period of two years. Professional services rendered in that way cannot be valued accurately, especially without having exactly the element of time which was consumed. We have no doubt *Page 252 
that it was with the utmost good faith that Blanchard, Goldstein, Walker O'Quin rendered their bill for $1,500, and that it was likewise with good faith that the Union Indemnity Company approved the bill. But the opinions of the attorneys who have placed a lower value upon the services are also entitled to consideration and respect. Taking into consideration that the liability of the New York Indemnity Company was reduced immediately, to the extent of $6,850.67, by Mr. O'Quin's obtaining for the company the balance due to Smith, we have decided to split the difference of opinion on the subject and fix the fee at $1,250 — that is, midway between the highest estimate of one of Smith's attorneys and the only estimate of the attorneys who testified for Blanchard, Goldstein, Walker 
O'Quin.
There was no complaint either in the pleadings or in the evidence of the bill for $35.05 for traveling expenses or the bill for $22.50 for the printing of briefs.
The judgment appealed from is amended so that the claim of Blanchard, Goldstein, Walker O'Quin is recognized to the extent of $1,307.55. It is therefore ordered that the receivers of the Union Indemnity Company shall pay to Blanchard, Goldstein, Walker O'Quin the sum of $1,307.55 out of the so-called "Cash Collateral Account," before paying to Michael H. Smith what remains of the fund of $2,759.67, and subject to the same conditions on which the receivers are ordered to pay the balance of the fund to Michael H. Smith. The costs of this appeal also are to be paid out of what remains of the fund. *Page 253 
 On Application for Rehearing or Explanation of Decree.