69 So.2d 508

**STANDARD ACC. INS. CO.**

v.

**ST. ROMAIN.**

No. 41180.

Dec. 14, 1953.

---

1. The Barilleau and Clark cases involved Act 34 of 1902, the predecessor of Article 74 of the Criminal Code.

Arthur Landry, New Orleans, for defendant-relator.

Montgomery, Barnett, Brown & Sessions, John Phelps Hammond, New Orleans, for respondent.

LE BLANC, Justice.

Plaintiff is a surety company which executed an indemnity bond in favor of the defendant. It seeks reimbursement from the defendant for certain expenses allegedly incurred by it as a result of a law suit instituted against him as principal and in which judgment was prayed for against them both, in solido.

The defendant herein, Emile E. St. Romain, principal on the said bond, was, during the year 1947, engaged in plumbing work as an independent contractor in the City of Houma, Louisiana. It became necessary under certain city ordinances for him to furnish a surety bond to protect any person with whom he contracted against any loss resulting from his negligence or from work improperly done, or

from any violation of any of the regulations of the City of Houma.

Defendant applied to the plaintiff surety company to secure the necessary bond. In his application he agreed:

"* * * to reimburse the said Standard Accident Insurance Company for all loss, costs, damages, charges and expenses whatever, resulting from any act, default or neglect of the undersigned that said Standard Accident Insurance Company may sustain or incur by reason of having executed said bond, or any certificate in continuation thereof. * * *"

The bond was executed and while it was in effect, defendant contracted with the Funderburk Corporation in Houma to install and complete certain plumbing work. The work was completed, inspected and approved and defendant was paid under his contract.

In March, 1950, a demand was made upon the plaintiff herein on the bond executed by it, by an attorney representing Funderburk Corporation, for work allegedly improperly performed by the defendant, the claim amounting to the sum of $973.95. The following month, that is, in April 1950, the Funderburk Corporation filed the suit in Terrebonne Parish which forms the basis of the demand in the present suit.

In that suit Funderburk Corporation had alleged that in April, 1949, it was noticed that there was seepage through the wall and ceiling of the building where the plumbing work performed by St. Romain was located and upon inspection it was found that the joints were not soldered with oakum and lead as required by the city ordinance of the City of Houma and that in other places it was found that the toilet had been improperly installed; that water flowed on the floor when the toilet was flushed, all resulting from a broken cast iron pipe in the cement which should have been removed by St. Romain.

It was also alleged in the petition in that suit that Funderburk Corporation was willing to allow St. Romain a period of sixty days from the date of filing its suit within which to replace the bad workmanship and correct the work improperly done.

After that suit was filed and it had been served with citation, the surety company, plaintiff herein, referred the matter to its attorneys but meanwhile, defendant had gone to Houma and at his own expense, had torn down a portion of the wall to examine the defects complained of and agreed to correct them. At the same time plaintiff turned the claim over to its adjuster for investigation. A considerable amount of correspondence ensued between the adjuster's local agency in Houma, the plaintiff and the attorney for Funderburk Corporation. The attorney for Funderburk Corporation gave defendant until October 1, 1950 to complete the necessary work. By September 1950 the work had not yet

been completed, not through any fault of the defendant, but because he was unable to have access to the building in which the repairs were to be made. Plaintiff's attorney wrote to the attorney for Funderburk Corporation and asked that the time for completion of the work be extended to November 1, 1950 which request was granted.

This further extension was not necessary, however, for Funderburk Corporation, on September 26, 1950, through its attorney, notified plaintiff's attorney that the repairs had been completed and that the suit which had been filed would be dropped. He also wrote them as follows:

"I understand that when the wall was torn open to examine the plumbing it was found that the connections had been properly leaded, but that some cement had been placed over the lead which led the owner to believe all of the connections had been cemented. The places where the leaks occurred were caused by the deterioration of the materials, and it was not caused by bad workmanship on the part of Mr. St. Romain.

"I ask that you inform your client of these facts so that Mr. St. Romain's record may be cleared."

The Funderburk Corporation then dismissed the suit at its own cost.

Plaintiff then made demand upon St. Romain to reimburse them for expenses occa-sioned as a result of the law suit. The expenses claimed were as follows:

| | |
|---|---:|
| Long distance telephone calls and Telegram | $5.68 |
| Attorney's fees | 75.00 |
| New Orleans Rosenbush Claims Service (Adjuster) | 86.35 |
| | $167.03 |

On defendant's failure to comply with its demand, the surety company filed this suit against him in the First City Court for the City of New Orleans. Defendant filed an exception of no cause of action and then an answer averring that as the suit against him and the surety company in Terrebonne Parish was not well founded, and as the Funderburk Corporation admitted that his work had been properly done and had dismissed its suit as one filed in error, he was not obligated under the indemnity agreement to reimburse plaintiff for the expenses thereby incurred. After trial on the merits there was judgment in favor of plaintiff and against defendant for the full amount of the demand.

Defendant then appealed to the Court of Appeal for Orleans Parish, 62 So.2d 302, 303, and that Court affirmed the judgment of the First City Court stating, among other matters, the following:

"Whether Funderburk's claim was legitimate is of no moment, for the simple reason that the defendant bound himself to reimburse the Standard Accident Insurance Company for all loss,

costs, damages, charges and expenses whatever by reason of its having executed the bond on behalf of the defendant. If counsel's argument is to be deemed valid, we would have to say that because a suit without merit is filed, the indemnity agreement is ineffectual. We think that the indemnity agreement covers all loss, costs, damages, charges and expenses whatever incurred by the surety in connection with the bond, even though the claimant has no debatable claim against the surety."

The Court cited the cases of Conway v. Union Indemnity Co., 185 La. 240, 169 So. 73, and United States Fidelity & Guaranty Co. v. Sellers, 18 La.App. 366, 137 So. 869, as decisive of this issue. A rehearing was denied.

An application for a writ of certiorari was made to this Court. The writ was granted and the case is now before us for review.

It may be well to state at the beginning that plaintiff is not contending and did not attempt to prove that the expenses paid by it were incurred as a result of any default or neglect on the part of defendant in performing his work under the contract with Funderburk Corporation. It takes the position that defendant is liable because he "agreed to indemnify respondent for all cost and expenses whatever incurred by respondent by reason of having executed the bond". The opinion of the Court of Appeal apparently is based on this reasoning.

The logic used evidently overlooks the provision in the indemnity agreement that the reimbursement by the principal who signed it, for losses, costs, etc., applies to those losses, costs, expenses, "resulting from any act, default or neglect of the undersigned". The effect of the construction placed by the Court of Appeal on the indemnity agreement in this case would be to make it as broad and as all-inclusive as was the one in the Conway case, supra [185 La. 240, 169 So. 75], wherein the principal agreed to "indemnify and keep indemnified the Company, and hold and save it harmless from and against any and all liability, damages, loss, costs, charges and expenses of whatsoever kind or nature, *including counsel and attorney's fees,* which the company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond herein applied for * * *."

The parties to an agreement of indemnity are at liberty to provide for the extent of the liability of the principal to the surety, and when they make it as broad as the one in the Conway case, then it may well comprehend a claim of the type being asserted here. However, if the parties limit the recoverable expenses to those "resulting from any act, default or neglect" of the principal then it will not extend to a suit which resulted, not from any act, default, or neglect of the principal, but

solely through a mistake or error of a third party with whom the principal had contracted.

A case outside of Louisiana which is found to be very much in point is that of Title Guaranty & Surety Co. v. Burke, 134 Ark. 499, 204 S.W. 215. In view of the similarity between the obligation undertaken by the principal in that case and the one undertaken by the principal here, we think that the reasoning applied by the Court in rejecting the Surety Company's demand for reimbursement for expenses incurred in defending a court action might well be followed in this case. The Court distinguished the case from that of United States Fidelity & Guaranty Co. v. Hittle, 121 Iowa 352, 96 N.W. 782 in which the indemnity agreement was much broader and very much the same as that in the Conway case. In making the distinction it stated [134 Ark. 499, 204 S.W. 216]:

"Here the surety company was not given the right to employ counsel at its discretion. Upon the contrary, Burke Bros. agreed only 'to indemnify the surety company against losses, costs, damages, charges, and expenses resulting from any of their acts, default, or neglect.' It is true Burke Bros. were sued, and judgment for a large sum of money was asked against the surety company on account of the default and neglect of Burke Bros. But it was determined that Burke Bros. had been guilty of no acts, default, or neglect out of which any liability against the surety company arose. The surety company did not reserve to itself in the written application the right to employ counsel at Burke Bros.' expense, as was done in the Iowa case supra, and the condition against which it had contracted did not arise, because it did not sustain or incur any liability on account of the acts, default, or neglect of Burke Bros., and the court properly so instructed the jury, and its judgment will therefore be affirmed."

The suggestion in brief of counsel for plaintiff that recovery based on quantum meruit should be allowed, is inappropriate inasmuch as under its pleadings, the demand is predicated exclusively on the indemnity agreement.

The conclusion we have reached makes it unnecessary for us to go into a discussion of the merits of defendant's exception of no cause of action even though there may be substance to the contention urged thereunder.

For the reasons stated the judgment of the Court of Appeal is reversed, annulled and set aside and it is now ordered that there be judgment in favor of the defendant, Emile E. St. Romain, and against the plaintiff, Standard Accident Insurance Company, rejecting the demands of the said plaintiff and dismissing its suit at its costs.

HAWTHORNE, J., absent.