[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 680 
The plaintiff company and the defendant M.H. Smith entered into a contract on March 10, 1930, under the terms of which the defendant Smith bound and obligated himself to drill for plaintiff an oil or gas well in the parish of Caddo. The contract was reduced to writing and bond was made with the New York Indemnity Company as surety. The well was completed, and on June 28 the oil company filed and recorded its acceptance of the work. The contractor failed to pay all claims for labor and materials. Certain of the claimants filed and recorded liens in the mortgage records of Caddo parish. Certain others made claims but failed to file and record them.
The oil company brought this concursus proceeding, citing all claimants to come in and assert their claims.
There were in all eight claims filed, among them being that of W.D. Perritt, the Halliburton Oil Well Cementing Company, and the S. Bender Iron Supply Company.
These three claims only are involved in this appeal.
There was judgment below for W.D. Perritt against Smith, the contractor, for $300, *Page 682 
but rejecting his demands against the surety; and judgment for the Halliburton Oil Well Cementing Company against the contractor for $225, but rejecting its demands against the surety and judgment for S. Bender Iron Supply Company against the contractor for $1,623.91, and for the contractor on his reconventional demand against the S. Bender Iron Supply Company for $1,584. The demands of the S. Bender Iron Supply Company against the security were rejected.
Perritt, the Halliburton Company, and the S. Bender Iron Works Supply Company appealed. Smith, the contractor, has answered the appeal, praying that the judgment appealed from be affirmed in all respects except as to the claim of the S. Bender Iron Works Supply Company. As to it, he asks that the appeal be dismissed.
1. Neither Perritt nor the Halliburton Company recorded their claims in the mortgage records. The S. Bender Iron Supply Company did file and record its claim, but the contractor was drilling two wells at the same time, and its claim was filed against the wrong well. So that, so far as this case is concerned, it is conceded that it has no claim against the surety, unless it be held that the surety is liable despite the claimant's failure to record its claim.
It is contended, however, by this claimant as well as the other two that laborers or furnishers of material may recover against the surety on the contractor's bond without the necessity of filing and recording their claims and without giving notice to the owner.
On the contrary, it is argued by counsel for the surety company that under Act No. 232 *Page 683 
of 1916, the provisions of which it is claimed control this case, the filing of the claims, and giving notice to the owner are essential prerequisites to the preservation of the rights of laborers and materialmen to recover against the surety.
It was contended in the lower court by counsel for the claimants that Act No. 232 of 1916 had been repealed by Act No. 298 of 1926, and that their rights against the surety on the contractor's bond are regulated by the provisions of the latter act. They stress that point here because the latter act provides that a surety is limited to such defenses as the contractor can make, and it has been held repeatedly by this court in construing statutes containing similar clauses that it is not necessary for such claimants to file liens and serve notice on the owners in order to recover against the surety. Shreveport Mut. Building Ass'n v. Whittington, 141 La. 41, 74 So. 591; American Creosote Works v. Ætna Casualty Surety Co., 167 La. 601,120 So. 21; Madison Lbr. Co. v. Bachemin et al., 166 La. 1066,118 So. 141; Haynesville Lbr. Co. v. Casey, 165 La. 1065, 116 So. 559; Fidelity Homestead Ass'n v. Kennedy Anderson, 158 La. 1059,105 So. 64; Audubon Homestead Ass'n v. Stef Lbr. Co., 158 La. 1054,105 So. 62; Truscon Steel Co. v. B. T. Const. Co.,170 La. 1083, 129 So. 644.
Therefore, if Act No. 232 of 1916 was repealed by Act No. 298 of 1926, the surety in this case has no defense under the above-cited cases. They do not concede, however, that they cannot, under the circumstances here disclosed, recover against the surety under the act of 1916. *Page 684 
2. Act No. 232 of 1916 is a special act relating only to contracts entered into "for the drilling of any well for oil, gas or water." Section 1. Act No. 298 of 1926 has reference only to building contracts. Its title, which is indicative of its object, reads in part:
"An Act relative to building contracts, and relative to the construction, erection, reconstruction, repair or improvement, or other work, on immovable property, under a building contract, 47or otherwise."
It is provided in section 16 that the manner and method of creating and preserving liens and privileges created by the act shall be exclusive, and it repeals all laws or parts of laws inconsistent with its provisions and on the same subject-matter, including the articles of the Civil Code, and especially repeals Act No. 230 of 1924, Act No. 139 of 1922, Act No. 262 of 1916, and Act No. 229 of 1916, and all acts amendatory thereof.
By reference to the acts repealed, it will be noted that each of them refers to building contracts. Act No. 232 of 1916 is not mentioned in the repealing clause. But it is argued that said act is repealed by implication because section 11 of the act of 1926 mentions "work is caused to be erected by a mineral lessee."
That section provides that, when any work is done "on buildings or other improvements made" for one who is not the owner of the land upon which the "work" is located, the one for whom the work is done shall be subject to all the obligations which are made incumbent on the owner by the act, and "the liens and privileges created and established by this act shall operate upon whatever right said person having the work done or doing *Page 685 
the work may have to the use of the land as lessee; and said lien and privilege shall operate against the lease such person holds, if there is one, or if said work is caused to be erected by a mineral lessee, then the privilege shall exist against the mineral lease and whatever rights the lessee may have therein, thereon or thereto."
It is therefore clear enough that this section of the act has no reference to liens and privileges against oil, gas, or water wells drilled on leased premises, but relates only to liens and privileges against such buildings or improvements as the lessee may erect on the leased premises.
Those who hold mineral leases frequently erect upon the land covered by the lease, in case their wells are productive, compressor stations, absorption plants, and machinery for the extraction of gasoline from gas as well as houses for their workmen. Under former acts relating to building contracts, there was no mention made of buildings or other works erected by persons who were not owners of the land. For that reason section 11 was put into the act of 1926 for the protection of those laborers and materialmen who contribute to the building of structures and other improvements for persons other than the owners of the land.
The trial judge held that Act No. 298 of 1926 did not repeal Act No. 232 of 1916, and we hold that his ruling was correct.
3. He further held that under the act of 1916 those laborers and furnishers of material who fail to record their claims in time and to serve timely notice upon the owner *Page 686 
have no right of action against the surety on the contractor's bond. In so holding he erred.
Act No. 232 of 1916 refers to drilling contracts. It provides in section 1 that every contract for $1,000 or more entered into for the drilling of any well for oil, gas, or water shall be reduced to writing, signed by the parties, and recorded. And in section 2, that such recordation in the office of the recorder of mortgages shall create a lien and privilege on the well, appurtenances, and appliances thereto attached for its equipment and on the ground immediately next to the well not to exceed ten acres.
Section 3 provides that the owner of the well shall require of the contractor a bond with surety, which bond shall be attached to and recorded with the contract, the condition of the bond to be:
"The true and faithful performance of the contract and the payment of all sub-contractors, workmen, laborers, mechanics and furnishers of materials by the contractor or undertaker; the said bond to be made in favor of the owner, sub-contractor, workmen, laborers, mechanics and furnishers of materials jointly as their interest may appear."
Section 6 reads as follows:
"Be it further enacted, etc., That the purpose of this Act is to require owners to secure bond with solvent and sufficient security of the contractor or undertaker for the protection of all parties interested in the contract, and as their interest may appear, in which said surety is to stand in place and stead of adefaulting contractor or undertaker." (Italics ours.) *Page 687 
4. The contract involved in this case was made and the bond given pursuant to the provisions of the act of 1916. The bond is statutory, and therefore the liability of the surety and the rights of the claimants are fixed by the terms of the act. All provisions in the bond not found in the statute are to be read out of it, and all requirements of the statute not found in the bond are to be read into it. Murphy Iron Works v. U.S. Fidelity 
Guaranty Co., 169 La. 163, 124 So. 768.
This act does not contain the provision, as do others adopted for the protection of laborers and furnishers of material, that the surety is limited to the defenses which the contractor can make; but it does contain a provision of similar import. It provides in section 6 that: "Said surety is to stand in place and stead of a defaulting contractor or undertaker."
A claimant for labor or materials furnished need not under any law record his claim and serve notice on the owner in order to render the contractor liable. He is bound primarily. If he defaults, his surety, under the very letter of the act, "stands in his place and stead." The surety steps into the shoes, as it were, of the defaulting contractor, and can make no defenses which the contractor could not make.
Act No. 298 of 1926, relating to building contracts in fixing the liability of the surety to laborers and furnishers of material, provides in section 3 that "said surety shall be bound to the same extent as the said contractor, undertaker, master-mechanic, or engineer, or other person undertaking such work," and in section 6 that "the surety shall be entitled to make only the same defense as *Page 688 
the contractor for whom he signed as surety is authorized to make."
Prior acts relating to building contracts contain similar provisions as to the liability of the surety. But neither does the act of 1926 nor any of the others contain the stipulation that "said surety is to stand in the place and stead of a defaulting contractor or undertaker." We think the particular provisions in the building contract acts and that in Act No. 232 of 1916 with reference to the liability of the surety to laborers and materialmen, although expressed in different terms, mean the same thing.
The rule is now well settled that laborers and furnishers of material are not required to file and record their claims and serve notice on the owner as a condition precedent to their recovery against the surety. See cases cited supra.
5. On exception to capacity of S. Bender Iron Works Supply Company and motion to dismiss its appeal.
Defendant Smith has filed in this court an exception to the capacity of this claimant, and has moved to dismiss its appeal.
The record shows that defendant, without excepting to the capacity of the claimant in the lower court, answered its petition and made a reconventional demand against it. We find also that on August 26, 1931, defendant joined the other litigants in a motion to advance the case.
Having judicially admitted the capacity of this claimant to sue and stand in judgment, and having appeared in this court and asked and obtained an assignment of the case, he has waived whatever objection he *Page 689 
might have made to claimant's capacity as well as his right to have the appeal dismissed. Lafayette v. Farr, 162 La. 385,110 So. 624; Lane v. Ferre, 147 La. 796, 86 So. 186.
 On the Merits.
6. This is a concursus proceeding provoked by the owner of the oil well. It alleged that the well had been completed and accepted, and that certain claims were being made against it, among them being those now before this court. It prayed that all claimants be cited to come in and assert whatever claims they might have, and that, if no objection was made to the sufficiency or solvency of the bond, then that an order be issued requiring the clerk to issue to it a certificate to that effect, and that all claims against it be canceled.
The S. Bender Iron Works Supply Company answered, alleging that it had sold to the contractor, M.H. Smith, oil well supplies and piping amounting to $4,091.33, which had been used in drilling this well, and that it had received a payment of $1,000 thereon. It prayed for judgment against the contractor and his surety in solido for $3,091.33.
The New York Indemnity Company made appearance, admitted that it executed the bond as surety, but denied liability to this claimant and all others.
Smith, the contractor, answered, admitting the correctness of this account, except as to the number of feet of piping purchased for this well, and the price. The claimant's account showed that it had sold the contractor 2,760 feet of 6" piping for the well at $1.14 per foot. The contractor claims that he purchased only 2,409 feet at $1 per foot. The *Page 690 
trial judge found, and his finding is supported by the evidence, that the contractor purchased 2,760 feet at $1 per foot.
It is shown that the Bender Company sold the contractor a pump, a pair of tongs, an engine bed, a boiler, and certain fixtures amounting to $862.50. This amount should be deducted from the bill. This was machinery used in drilling the well, and the claim for it cannot be considered in these proceedings. Act No. 232 of 1916, under which this contract was made and the bond given, contains no reference to machinery used in drilling of wells, but relates only to the well "and appurtenances and appliances thereto attached for its equipment." Section 2.
The only claim which may be considered in this proceeding is that for the piping which went into the well, amounting to $2,760.
This claimant is entitled to judgment against the contractor and the surety on his bond, in solido, for $2,760, less $1,000 paid on the claim.
The contractor set up a reconventional demand against the Bender Company for the price of certain defective piping which he had purchased from it. But that piping was not used in this well, but in what is known as the Caldwell well, which was drilled on another lease. That claim cannot be considered in this proceeding, which is a concursus, involving only the claims pertaining to this particular contract.
7. As to the claim of Halliburton Oil Well Cementing Company. This claimant furnished the material and labor to cement the well at an agreed price of $225. The *Page 691 
claim is not disputed. It is entitled to judgment against the contractor and the surety in solido for the amount.
8. As to the claim of W.D. Perritt for $300. This claim is for the rent of machinery used in making four tests of the well at $75 per test. Smith, the contractor, owes this amount, but the claimant cannot recover from the surety, as this was not an appurtenance or an appliance for the equipment or operation of the well. There was judgment for claimant against the contractor and rejecting his demands against the surety.
For the reasons assigned, the judgment appealed from is affirmed as to the claim of W.D. Perritt; and, as to the other claims, it is amended so as to read as follows:
It is ordered and decreed that Halliburton Oil Well Cementing Company have judgment against and recover of M.H. Smith and the New York Indemnity Company, in solido, the sum of $225, with interest at 5 per cent. from judicial demand, until paid; and further ordered and decreed that the S. Bender Iron Works 
Supply Company have judgment against and recover from M.H. Smith and the New York Indemnity Company, in solido, the sum of $1,760, with interest at 5 per cent. from April 14, 1930, until paid.
All costs incurred in the lower court in connection with the claim of W.D. Perritt are to be paid by the defendant M.H. Smith, costs of appeal to be paid by said Perritt; and there is judgment against the defendant M.H. Smith and the New York Indemnity Company in solido for all costs incurred in both courts in connection with the claims of Halliburton Oil Well Cementing Company and the S. Bender Iron Works Supply Company. *Page 692 
O'NIELL, C.J., is of the opinion that the contractor has the right to claim credit for the defective piping, and otherwise concurs.
 On Rehearing.