*448
 
 O’NIELL, Chief Justice.
 

 This is a suit on a promissory note. The note is for $7,500, and is signed by JurgensFowler Company, Inc., per George B. Jurgens, president, and T. Walter Fowler, vice president, and is indorsed by Jurgens and Fowler, individually. The suit is against the corporation as maker of the note and Jurgens as indorser. Judgment was rendered against them, in solido, for the amount of the note, with the stipulated interest and' attorneys’ fee. They have appealed from the decision.
 

 In their answer to the suit, the defendants ■acknowledged the signature and indorsement •of the note sued on, but averred that the bank had charged off against the funds of the Jurgens-Fowler Company, Inc., a promissory note for $11,000, purporting to be the obligation of the corporation, signed by the president and vice president and indorsed by them individually, but on which the signature and the indorsement of Jurgens were forged by Fowler. The defendants pleaded therefore, that if the bank had not applied the funds of the Jurgens-Fowler Company, Inc., to the payment of the note of $11,000, there would remain funds of the corporation, in the bank, sufficient to extinguish the genuine note of $7,500, now sued on, and to leave a balance due to the corporation. The defendants pleaded also that, if the proceeds of the note of $11,000 were in fact placed to the -credit of the Jurgens-Fowler Company, Inc., by the bank, and were paid out on checks purporting to be drawn by the corporation, the checks also were forgeries. The defendants prayed, therefore, that the bank’s demand should be rejected, and that they (the ■defendants), as plaintiffs in reconvention, should have judgment against the bank for such sum as would remain to their credit if the bank had not charged off the note of $11,000 — less, of course, the amount of the $7,500 note sued on, but without interest, attorneys’ fee, or costs.
 

 Fowjer, who had left New Orleans and was in Washington, D. C., when the suit was filed, testified, under commission, as a witness for the defendants, that he had forged the note of $11,000. Jurgens and a handwriting expert also testified that the signature of Jurgens, as president of the corporation, on the note of $11,000, and the indorsement of his name on the note, were forgeries. There was testimony introduced by the bank, however, tending to prove that the signature of Jurgens, as president of the corporation, on the note of $11,000, and the indorsement of his name on the back of the note, were his genuine signatures. The judge who tried the case concluded, from the conflicting evidence,' that the signature of Jurgens, as president of the corporation, on the note of $11,000, and the indorsement of his name on the note, were his genuine signatures. It was for that reason that the judge gave judgment for the bank, without having to consider the question whether the checks that were drawn against the proceeds of the note of $11,000 were genuine or forged.
 

 Inasmuch as the record discloses— and it is not disputed — that the proceeds of the note of $11,000 were placed to the credit of the Jurgens-Fowler Company, Inc., by the bank, and were drawn out on the checks of the corporation and for the benefit of the corporation, it is a matter of no importance, in deciding this case, whether the note of
 
 *450
 
 $11,000 was actually signed and indorsed by Jurgens, or his signature was forged. The defendants, of course, bore the burden of proof of the alleged forgeries. The only evidence tending to prove forgery of the checks was the testimony of Fowler, given in Washington, under commission. The testimony of Jurgens is not at all satisfying, because he admitted that he had at times signed checks in blank, as president of the corporation, and that he had left the handling of such matters almost entirely to Fowler. Fowler testified that, besides the note of $11,000, the proceeds of which the Jurgens-Fowler Company, Inc., received credit for at the bank, he forged other notes of the corporation, amounting to $10,000, with the proceeds of which the corporation was credited by the bank. He testified that, of the several cheeks that were drawn against these deposits of $21,000, he forged the signature of Jurgens, as president, to five of the checks, amounting to $17,600.42, and, as to three other checks, amounting to $1,600, he said he was not certain that he had forged them, but thought so. The defendants contend, therefore, that, of the $21,000 deposited as*the proceeds of the forged notes of the Jurgens-Fowler Company, Inc., the sum of $19,200.42 was drawn out on forged checks, which should have left to the credit of the. company $1,799.58; and hence that, when the bank applied $11,000 to the payment of the alleged forged note, the bank took illegally from the account, of the company $9,-200.42 — being the difference between $1,799.58 and $11,000. The canceled checks which Fowler said he had forged were not produced. He testified that he had destroyed them. The consequence of the failure to produce the canceled checks was that the bank was deprived of the best evidence, on the trial of the case, as to whether the checks were in fact forged. It is argued for the defendants that the statement of Fowler that he forged the checks should be convincing, because of the improbability that any one would confess that he committed forgery if in fact he had not committed the crime. But the logic of the other side of the proposition is that one who is guilty of the crime of forgery (and especially one who is given to the practice of forgery, so to speak) is not generally worthy of belief, and, hence, when a confession of forgery (and particularly of a long series of forgeries) is made for the purpose of giving evidence in favor of some other individual, it is not improbable that the party “confessing” has a selfish motive in furnishing the evidence. It is quite likely that Fowler did forge the promissory note of $11,000, which was there to speak for itself when Fowler said he had forged it. But he knew, when he gave his testimony in this suit, being a suit on a genuine note, that the fact — if it was a fact — that some other note for which the defendant, corporation, got credit at the bank was a forgery would not avail the defendants in this suit unless the checks on which the proceeds of the forged note were drawn out were also forgeries. Fowler, perhaps, was not an impartial witness in this case. Jurgehs testified that Fowler confessed, two weeks before leaving New Orleans, that he had forged the note of $11,000; and yet Jurgens did not institute a criminal prosecution, but then lent Fowler $300 on his life insurance policy, when he was about to leave town. We are therefore not con
 
 *452
 
 vinced. by Fowler’s “confession” that the missing checks were forged.
 

 Aside from the lack of proof of forgery of the missing checks, the decision in this case might rest upon the proposition that the defendants are not in a position to plead the forgery. Jurgens owned all of the capital stock of the corporation, except a share that stood in Fowler’s name, and a share issued to each of two other directors; and Fowler’s stock certificate was indorsed and delivered to Jurgens, who paid for the subscription. Fowler kept the books and records of the corporation; but Jurgens, according to his testimony, examined the books and check stubs “quite often * * * once or twice a month * * * to see to whom the checks were made payable and what the balance was.” Jurgens did not only have access to the books and cheek stubs, but he was furnished a bank statement, with the passbook posted, and the canceled checks, at frequent intervals; and Jurgens testified that he examined some but not all of the bank statements and canceled cheeks. It is not denied that the bank gave him the opportunity to know at all times what checks were being drawn, and for what purpose, and what the balance was in bank. In fact, every statement furnished by the bank to the Jurgens-Fowler Company, Inc., was headed by a printed form of receipt of the bank statement and of the canceled vouchers with the printed statement: “I agree to examine same carefully and if not correct to give notice and make all reclamations wifhin ten days.” The doctrine of the decision in Israel v. State National Bank, 124 La. 885, 50 So. 783, citing Leather Manufacturers’ National Bank v. Morgan, 117 U. S. 96, 6 S. Ct. 657, 29 L. Ed. 811, is therefore very appropriate, viz.:
 

 “1. When a bank depositor sends his pass book to the bank to be written up, it is his duty upon its return, either in person or by duly authorized agent, to examine the account and vouchers returned within a reasonable time and give to the bank timely notice of any objections thereto. If he fails so to do, he may be estopped from questioning the conclusiveness of the account.
 

 “2. If the examination is made by an agent, it must be done in good faith and with ordinary diligence; and where such agent himself commits forgeries which mislead the bank and injure the depositor, the latter is not protected, in the absence of at least reasonable diligence in supervising the conduct of the agent.”
 

 Our conclusion is that the judgment appealed from is correct. After the judgment was rendered the Whitney Central Trust
 
 &
 
 Savings Bank was succeeded by Whitney National Bank of New Orleans, and the latter was ordered substituted as the party plaintiff and appellee.
 

 The judgment is affirmed.
 

 ROGERS, J., takes no part.