51 So.2d 798

## COUVILLON v. WHITNEY NAT. BANK OF NEW ORLEANS.

No. 39747.

March 19, 1951.

Milling, Godchaux, Saal & Saunders, New Orleans, for appellant.

John F. Connolly, New Orleans, for appellee.

LE BLANC, Justice.

In this suit plaintiff seeks a judgment against the defendant bank in the sum of $3,600 on the facts alleged in his petition, the pertinent of which are as follows:

That he is the sole owner of a real estate business which he operated under the name of "Mid-City Realty", and that at all times he maintained a checking account in that name with the Carrollton Branch of the defendant, Whitney National Bank of New Orleans, which account always had deposits greater in amount than certain checks later referred to and which form the basis of his demand.

That at all times since the opening of the said checking account he was the sole and exclusive person authorized to draw checks against the same and that for the purpose of identification, protection and limitation of authority, as is usual in such relationships, he executed and delivered to the said bank his specimen and true signature on a signature card which was at all times on file with the bank.

That during the period from June 30 through July 19, 1947, there were six checks in varying amounts and totalling $3,600 without his signature, authority or knowledge, charged by the bank against the said checking account and paid from his funds then on deposit; that each of the said checks bears the signature "Gus J. Couvillon" as drawer but that none of them were written or signed by him and, as far as he is concerned, they are each and all forgeries.

That on or about July 21, 1947, he called at the office of the Carrollton Branch of the defendant bank at which time the officers called his attention to certain irregularities in his checking account and exhibited to him each of the said six checks which were in their possession, whereupon he denied and protested the signatures thereon and knowledge thereof, all of them having already been honored and paid and charged to his account, and that he then timely protested said payment by affidavit as requested by the officers of said bank. That said checks were paid by defendant at its peril and through its own negligence in not timely detecting the forgeries and notifying him.

In its answer the defendant bank admits those allegations of plaintiff's petition relative to the checking account he maintained in its Carrollton Branch and the manner in which checks were to be drawn against it but denies all allegations regarding the six checks claimed to be forgeries. In the alternative and in the event it should be held that it wrongfully charged plaintiff's account with checks bearing forged signatures, defendant pleads the following facts in defense:

That on or about April 22, 1947, one Carlo A. Venezia entered into an agreement with Mid-City Realty, through its authorized agent, Walter H. Trahant, Sr., to buy certain property in connection with which he made a deposit of $1,150 and, similarly, on or about May 17, 1947, one Calvin Sensebe entered into an agreement under which he deposited $1,050, both of said deposits having been accepted by the said Trahant and amounted in legal effect, to an acceptance by Gus J. Couvillon the plaintiff, himself. That neither of said sales were ever consummated and it became necessary for Couvillon to refund the deposits. Accordingly, on June 30, 1947 a check in the sum of $1,150 made payable to Carlo A. Venezia was delivered to him in repayment of his deposit; that said check was cashed by Venezia and the proceeds thereof were therefore applied to the law-

ful obligation of the plaintiff. That on July 7, 1947, a check made payable to Calvin Sensebe in the sum of $1,050 was delivered to him, was cashed and in like manner the proceeds were applied to the lawful obligation of Couvillon.

That plaintiff otherwise received the sum of $1,500 from Walter H. Trahant in payment on any loss he may have suffered as a result of the cashing of the checks he claims were forged by the said Trahant and that the restitution thus made is more than ample to cover any additional loss.

In the further alternative defendant pleads with regard to the check in the sum of $1,050 dated July 7, 1947 and made payable to Calvin Sensebe, that the same was paid at plaintiff's instructions after it had been discovered that payment would overdraw the account, which fact was communicated to him and he is therefore estopped from claiming the amount thereof.

After trial in the Court below there was judgment in favor of plaintiff for the full amount of his demand whereupon defendant appealed.

It is now conceded that the checks were forged and, under the general rule relating to such matters, it would seem that in the absence of any estoppel arising out of the negligence of the plaintiff or of some form of ratification on his part, the bank would be liable. The rule is stated as follows in 9 C.J.S., Banks and Banking, § 356, p. 730: "A bank is liable to its depositor for charging his account with a

forged check unless the depositor was contributorily negligent, or is estopped or has ratified the payment". In the same section, in commenting further on how far a bank may justify its payments on these grounds, it is stated: "While no degree of care on the part of the bank will excuse it from liability, it may justify the payment of a forged check or order on principles of estoppel, or on the basis of negligent or misleading conduct of the depositor which directly or proximately caused the bank to pay. However, the bank must show due diligence before it can assert the negligence or estoppel of the depositor, and the bank will not be excused by the depositor's negligence unless it is the proximate cause of the bank's payment and of the resultant injury to it."

Applying these principles in the present case we can hardly see how the defendant bank can hope to exonerate itself in view of the facts as they appear.

Despite the fact that the forgeries covered a period of almost three weeks, during which time there were six forged checks presented for payment, none of the forgeries were ever detected until it appeared that plaintiff's account would be overdrawn and his attention was called to that fact. During that period these checks were in possession of the bank and at no time did the plaintiff see any of them.

It definitely appears that Couvillon did not know of an irregularity in his account until he was informed, in a telephone

conversation with the manager of the bank, that a check in the sum of $1,050 was being presented and that its payment would produce an overdraft of the account. From then on the testimony about dates on which conversations and conferences concerning this check and the overdraft took place is very conflicting and confusing and the bank's ledger sheets intorduced in connection therewith do not help to clarify the matter in any way. In order to maintain the estoppel urged and by which it claims to have been misled by plaintiff in paying this particular check, the bank had to show that its payment had been authorized by him at a time when he had knowledge or had reason to suspect that it had been forged, and this we do not think it has done. At any rate, that issue involved a question of fact which the trial judge, by reason of the judgment he rendered, must necessarily have resolved against the defendant and we cannot say that he manifestly erred in doing so.

■■ Counsel for defendant also urge estoppel against the plaintiff on the ground that he was too trusting in his friend and associate who betrayed his trust. It is stated that as early as April 22, 1947 the friend had misappropriated his funds in the Venezia transaction and had he exercised the slightest degree of care he would have become aware of his dishonesty long before and could have prevented the forgeries sued upon. We do not see how that question can be injected in this case where the issue is restricted to the liability of a bank for having charged a depositor's account on a forged check. This plea was not entered until after all the evidence and testimony had been introduced and then only by an amended answer which was objected to by plaintiff's counsel. The trial judge permitted the amendment. We are not sure that this was proper because the relation between a bank and its depositor has no connection whatever with the relation between the depositor and one of his agents. The depositor does not warrant the honesty of his agent or employee to the bank, "Nor does he owe the duty to his banker to employ none but honest clerks who will not steal his checks and commit forgeries by means of them". United States Cold Storage Company v. Central Mfg. Dist. Bank, 343 Ill. 503, 175 N.E. 825, 829, 74 A.L.R. 811.

We have come now to consider the benefit theory which the defendant bank contends must be applied as to the Sensebe check in the sum of $1,050 and the Venezia check for $1,150, inasmuch as the proceeds of both these checks constituted the return of the deposits which the bank claims plaintiff was legally obligated to make to these two parties and consequently he has suffered no actual harm or loss by the payment of these two forged checks.

■ Counsel for defendant cite cases, one of them decided by this court, in which they state that the legal principle of the benefit theory was recognized. The Louisiana case cited is Whitney Trust & Savings

Bank v. Jurgens Fowler Co. Inc., 180 La. 445, 156 So. 460. But in that case, as well as in others we have read, in which the theory was upheld, it is noted that the proceeds of the forged checks were received by the depositor himself, the same having been deposited to the credit of his account in the bank. This is in conformity with the rule laid down in 9 C.J.S., Banks and Banking, § 356, p. 732, which requires *actual* receipt by the depositor for its application. The rule there reads as follows: "If the depositor has actually received the proceeds of a check, the fact that the check was forged does not render the bank responsible for the amount."

In this case not only were the proceeds of these two forged checks never *actually* received by the depositor but the fact is that, to the contrary, it was Trahant, who by his forgeries, made available the proceeds which eventually went into the hands of Sensebe and Venezia, in order to cover his defalcations.

We do not know by what right the bank can champion the cause of the payees of these checks. No issue is drawn between them and the plaintiff in this suit. It is true that defendant urged these matters in its answer but under our system of pleading which does not permit replication, Couvillon could not put them at issue. Non constat he may have had some valid defense to urge against refunding these deposits.

It may well be that all these issues could be presented to the court on proper pleadings and with all necessary parties before the court, but the fact remains that such is not the situation in this case where the issues have to be restricted to those presented in the pleadings.

We take up now the last point urged by defendant which involves the rule of imputation of payments under Articles 2163 et seq. of the Revised Civil Code.

In addition to the $3,600 comprising the total amount of the six forged checks sued on and which are referred to as "Series–A", it appeared that Trahant had made previous defalcations which Couvillon also made good to the parties concerned. He paid these by checks drawn on the same account. In all there are eight such checks amounting to $2,964 and they are referred to as "Series–B". The first of these is dated July 30, 1947.

On July 26, 1947, Trahant made restitution to Couvillon, through the latter's attorney, to the extent of $1,500. This sum was paid in cash and receipted for by Couvillon's attorney with the following notation on the receipt: "Acct. Bank & Gus J. Couvillon". The defendant contends that the notation binds the plaintiff to the imputation of the payment to its indebtedness to the extent of $1,500 whereas plaintiff argues that it constitutes no imputation whatsoever and was intended merely for the purpose of identification.

In presenting their argument counsel for defendant predicate it on the assumption that when the receipt was given, the only defalcations plaintiff was aware of were those which had occurred through the six forged checks and accordingly he and his attorney had in mind, and were dealing specifically with that indebtedness when the restitution of July 26, 1947 was made and the receipt issued with the notation it bears. It is significant however that counsel state in their brief that "Couvillon *probably* was not aware" (emphasis supplied) of any other defalcations than the amounts of the forged checks and in the very part of Couvillon's testimony which they had just before quoted, it appears that although he may not have known of all the other claims that were outstanding, he did know of some of them. We are of the opinion therefore that, to their knowledge, Trahant's indebtedness involved more than the amount of the forged checks when he made restitution of $1,500 and that as he, himself, did not declare, as he had the right to under Article 2163 of the Revised Civil Code which of the debts he owed Couvillon he meant to discharge, plaintiff is not bound by a notation on the receipt which his attorney states was made for purposes of identification only, at a time when he was acting in the interest of and for the account of his client alone. Under that view of the matter, Article 2165 of the Revised Civil Code has no application because there was no imputation of any special debt contained in the receipt which the debtor, Trahant, accepted and moreover there is nothing in the record from which to intimate that he was interested in having any imputation made.

But counsel urge further that even though the notation on the receipt does not amount to an imputation of payment, the law itself imputes the payment to the defendant bank because the indebtedness arising out of the forged checks was the one which Trahant, at that time, had the most interest in paying. This contention is based on Article 2166 of the Civil Code which reads in part as follows: "When the receipt bears no imputation, the payment must be imputed to the debt, which the debtor had at the time most interest in discharging, of those that are equally due; * * *." Certain decisions are cited which hold that the debt referred to in the Article means one for which a surety is bound with the debtor rather than one for which he is singly bound, from which it is argued, in defendant-appellant's brief, as follows: "These additional claims (to which Appellee now seeks to impute this payment) were not known at the time. If they had been known, Trahant was 'singly bound' for them, while with regard to the claims in suit, the Bank was, so far as said persons then knew, to all intents and purposes in the nature of a surety to Trahant with regard to those checks for which it might have no valid defense. Thus, the claims involving the bank were the debts which Trahant had most interest in discharging."

■ Again counsel's argument seems to be predicated on the assumption, erroneous as we have already shown, that the additional claims were not known at the time. This is not important however in considering the point at issue. In the cases cited by counsel, Vinton Grain Co. v. Rickerson, La.App., 148 So. 292 and Calatex Oil & Gas Co. v. Smith, 175 La. 678, 144 So. 243, in which it is stated that the debt mentioned in Article 2166 means one for which a surety is bound with the debtor, the court obviously was referring to a surety within the true and real meaning of that term; in other words one who was bound under a contract of surety according to the terms of Article 3035 of the Civil Code which defines suretyship as "an accessory promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not." Further, by the terms of Article 3039 we see that suretyship "can not be presumed; it ought to be expressed, and is to be restrained within the limits intended by the contract". Clearly, that is a far different contract from the sort of suretyship that is sought to be created for the defendant bank in this case. There is no merit in this contention.

■ The judgment of the trial court decreed legal interest on the amount of each of the six forged checks from their respective dates. There is nothing in the record to indicate that the contract of deposit between the plaintiff and the defendant bank provided for the payment of interest and therefore under Article 1938 of the Revised Civil Code which provides that "All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated" applies. In the early case of Etting v. Commercial Bank of New Orleans, 7 Rob. 459, legal interest on a judgment against a depositary of money paid on a forged check was allowed from date of judicial demand. The judgment in this case will therefore have to be amended with respect to the interest allowed.

For the reasons stated it is ordered that the judgment appealed from be amended by decreeing legal interest on the full amount prayed for from the date of judicial demand, and as thus amended it is affirmed.

HAWTHORNE, J., takes no part.