HARDY, Judge.
This is an action by plaintiff corporation against the Ouachita National Bank in Monroe and its insurers, seeking the recovery of $12,680.19 allegedly paid out by the negligence of defendant bank. From judgment in favor of plaintiff in the principal sum of $43.84, plaintiffs have appealed. Defendants have answered the appeal, praying that costs be taxed against appellant.
The facts are so well established that there can remain no reasonable possibility of contention. Plaintiff corporation has operated a general insurance agency in the City of Monroe for a period of much more than ten years, and during that time has maintained an active checking account with the Ouachita National Bank. For a slightly less period of time than ten years, plaintiff employed as its bookkeeper, Mrs. Lou Ella Snapp. The basis of plaintiff’s action is that during the period from about January, 1959, to October, 1960, plaintiff’s employee, Mrs. Snapp, embezzled funds belonging to plaintiff corporation to the extent of $12,680.19, which defalcation was chargeable to defendant bank because of its negligence.
It is established that from January, 1959, through October, 1960, Mrs. Snapp withdrew funds in the amount set forth, consisting of 101 separate transactions, upon the basis of what is described and will be referred to as “less cash” transactions.
Mrs. Snapp, in the employ of plaintiff, was charged, inter alia, with the duties of supervising plaintiff’s books of account; the handling of petty cash and checks; the writing of checks drawn on plaintiff’s bank account; the receipt of bank statements and the reconciliation thereof, together with other duties in connection with her general bookkeeping activities.
With respect to plaintiff’s claim in the instant case, it is established that on or about January 9, 1959, Mrs. Snapp presented a deposit slip to one of the tellers *306 of defendant bank, listing checks totaling $825.15, with the notation “less $34.50”, representing that the sum of $34.50 was to be paid to her for the benefit of plaintiff. Subsequent deposits and “less cash” withdrawals were made in the same fashion, exhibiting “less cash” withdrawals ranging from sums of slightly more than $7.00 to amounts exceeding $700.00. Admittedly, the total of these “less cash” withdrawals over the period of time concerned amounted to the sum of $12,680.19, which is the sum sought to be recovered by plaintiff in the present action.
At the time of the first “less cash” withdrawal Mrs. Snapp had been in the employ of plaintiff for a period of almost nine years and had been accustomed to making deposits to the credit of plaintiff’s account to the extent of some $400,000.00 per year.
In accordance with its custom, the bank rendered monthly accounts to its depositors, including this plaintiff, showing notations of the amounts deposited and enclosing all cancelled checks.
From and after January 9, 1959, through October 12, 1960, the “less cash” withdrawals made by Mrs. Snapp would have been clearly exhibited by an examination of plaintiff’s net deposits. It is established by the record that no audit or check of any kind was made by plaintiff with respect to Mrs. Snapp’s handling of funds until an error, occurring in her absence due to illness, was discovered on or about October 15, 1960, by one of the partners of the plaintiff corporation. A subsequent examination led to the discovery of the embezzlement, but the irregularities were not reported to defendant bank until December 2, 1960, the day following the death of Mrs. Snapp.
This case was consolidated for trial with an action by plaintiff against the Succession of Lou Ella Snapp for a principal sum in excess of $30,000.00, in which case judgment was rendered in favor of plaintiff.
In the instant case, defendant bank interposed a third party petition against the Administrator of the Succession of -Lou Ella Snapp, seeking judgment for whatever amount might be rendered against plaintiffs. This petition was recognized and there was judgment in favor of the third party plaintiffs, defendant bank and its insurer, and against the third party defendant, the Succession of Lou Ella Snapp, in the sum of $43.84, with interest, etc.
We find no great difficulty with either the facts of the law in the instant case. Plaintiffs contend that the payment of “less cash” withdrawals by Mrs. Snapp, in the face of written authorizations to defendant bank naming the partners of plaintiff corporation as the sole parties authorized to withdraw sums from its account, constitutes negligence which fixes liability for loss upon the defendant bank as depositary. In support of this position, plaintiff cites, inter alia, Pelican Well Tool & Supply Company v. Sabine State Bank & Trust Company, 18 La.App. 590, 138 So. 161, and Couvillon v. Whitney National Bank of New Orleans, 218 La. 1096, 51 So.2d 798.
The cited cases are readily distinguishable from the instant case.
From the Pelican Well Tool case we quote the following observation from the opinion of the court:
“Immediately upon receipt by plaintiff of a statement from defendant with the canceled checks, plaintiff wrote defendant repudiating the acts of Webb and demanding reinstatements of the amounts withdrawn to plaintiff’s account. Plaintiff, we think was not estopped from claiming restitution. It is not shown that any previous withdrawals had been made by Webb of any of these funds.” (Emphasis supplied)
In the Couvillon case, the opinion of the court contains the following observation:
“Despite the fact that the forgeries covered a period of almost three weeks, during which time there were *307 six forged checks presented for payment, none of the forgeries were ever detected until it appeared that plaintiff’s account would be overdrawn and his attention was called to that fact. During that period these checks were in possession of the bank and at no time did the plaintiff see any of them.” (Emphasis supplied)
In the case before us, it is obvious that after the end of January, 1959, plaintiffs were furnished with statements of account by the defendant bank. If any examination had been made of these accounts, there is no question but that" the embezzlements would have been exposed.
Regardless of the questions of negligence on the part of plaintiff or defendant in the instant case, it is clear that the equitable doctrine, that, as between tzvo innocent persons the one who most contributed to the loss should bear the consequences, is applicable; De Feriet v. Bank of America, 23 La.Ann. 310; Israel v. State National Bank of New Orleans, 124 La. 885, 50 So. 783; Whitney Trust & Savings Bank v. Jurgens-Fowler Company, 180 La. 445, 156 So. 460; Clark-Kelley Livestock Auction Co. v. Pioneer Bank & Trust Company, 228 La. 224, 81 So.2d 869.
The record appears to sustain the conclusion that the same nature of irregularities occurred prior to January, 1959, which would indicate that the allowance of judgment on behalf of plaintiff for any amount was not justified. Despite the fact that no point has been made of this minimal judgment, by either party, the defendants properly complained, in answer to the appeal, that the allowance of three-fourths of the costs against defendants, as fixed in the judgment of the trial court, is improper. We are in accord with this conclusion. There is a serious question in our minds as to whether the losses of January, 1959, should have been allowed. Additionally, we are aware of the fact that this suit was consolidated for trial with an action against the Succession of Lou Ella Snapp for a considerably greater amount, in which judgment was rendered in favor of plaintiffs.
Under the circumstances, we are convinced that all costs should be taxed against the third party defendant.
For the reasons assigned, the judgment appealed from is amended to the extent of taxing all costs of both courts against third party defendant, the Administrator of the Succession of Lou Ella Snapp, and, as so amended, it is affirmed.
Rehearing denied; BOLIN, J., dissents.