**FIRST NATIONAL BANK IN GRAHAM, Texas, Appellant,**

v.

**W. B. FULTZ, Appellee.**

**No. 16555.**

Court of Civil Appeals of Texas.

Fort Worth.

June 26, 1964.

Rehearing Denied July 17, 1964.

Cantey, Hanger, Gooch, Cravens & Scarborough, Edward L. Kemble and Emory Cantey, Fort Worth, for appellant.

Jennings, Montgomery & Dies and Frank Jennings, Graham, for appellee.

RENFRO, Justice.

The appellee, W. B. Fultz, as plaintiff, brought suit against First National Bank in Graham to recover the sum of $13,060 caused by defendant's failure to credit to plaintiff's account the total amounts of certain checks deposited to his account during the period from February, 1960 to April, 1963.

Both parties moved for summary judgment.

The court, after considering the pleadings, the depositions and supporting affidavit, rendered judgment for the plaintiff.

It is urged by defendant that fact issues existed as to whether plaintiff was negligent in failing to discover that his employee, Mrs. McCoy, was withholding cash from deposits of checks in defendant's bank.

Since the appeal is from a summary judgment, it is necessary to set out the evidence (in seven depositions) in detail.

Plaintiff, an oil operator, had been a depositor of the bank for about 39 years; had been a director since 1937 or 1938. In 1955 plaintiff acquired the "Anzac Properties" and opened an account in the Bank called the Anzac account. The money in the account was from the sale of crude oil for his interest in the Anzac properties and payments from other interest owners for their proportionate operating expense.

On the recommendation of his son Wilford, whom he had taken in as a partner or joint owner, plaintiff in 1955 employed Mrs. McCoy as general office girl, bookkeeper, stenographer and receptionist. She was the only office employee. She received the mail and the checks, made out the deposit slips and deposited the checks in the Bank.

On the back of each check was rubber-stamped the endorsement: "Pay to the Order of The First National Bank, Graham, Texas, For Deposit Only, W. B. Fultz."

In February, 1960, Mrs. McCoy made out the deposit slip for the amount of the checks to be deposited, but wrote on the slip, "less cash" a certain amount of money. She continued this practice until April, 1963, the amounts withheld ranging from $50 to $300 and in full to $13,060.

The general policy of the Bank was to require a depositor or anyone with authority to draw checks on a particular account to sign a signature card. Mrs. McCoy never signed a signature card. Plaintiff never gave her permission to check on the account, or withhold any amount when making deposits.

The Bank tellers never questioned her authority to withhold the amounts of the "less cash" items because they trusted both plaintiff and Mrs. McCoy. On occasion she would tell the clerk or teller that Wilford

needed money for traveling or other expenses.

In part she explained her method of operation as follows:

"Q—Now, Mrs. McCoy you kept the books, so with these cash withdrawals it would be necessary to do something in order to make the bank statements reconcile with your books. Would you state how that was accomplished and how that was done in order to make the books balance and reconcile with the bank statements?

"A—Well, every month Wilford wrote counter checks for traveling expenses and various things, and I always totaled it up at the end of the month when I got the bank statements. I totaled those checks up and entered it in the check stubs in order to make the bank statements balance with the books.

"Q—Give us a specific example. Maybe it would be a little clearer for a given month. How would that be handled?

"A—I don't understand what you mean.

"Q—Well, let's say that during a given month you had made cash withdrawals of say $300.00. How would the books be fixed in order to cover that in dollars?

"A—Well, if Wilford had wrote $250.00 in counter checks, I would put in the check book $550.00 which would include the $300.00 cash which would be withdrawn.

"Q—I see. So that the check stub then would show the actual amount of money on deposit in the account at all times?

"A—Yes."

Upon making a deposit she would place the duplicate deposit slips with the current bank statement in the front of the checkbook. The checkbook, statement and duplicate deposit slips were kept in an unlocked desk drawer in her office. There was nothing to prevent plaintiff from seeing and inspecting the deposit slips, but "they looked at the stubs instead of looking at the deposit slips."

Plaintiff and son often discussed what plaintiff considered to be excessive expense accounts on the part of the son, but neither ever checked the canceled checks with the check stubs to determine why the expenses were so high.

Plaintiff testified he examined the bank statement every month—verified every check—looked at balance shown on statement, and checked monthly balance with the check stubs, but never did try to reconcile the canceled checks with the check stubs.

Nor did he compare them with the daily journal entries. If he had been on the alert he would have discovered something was wrong.

Although the son Wilford did not sign a signature card at the Bank, he wrote and signed checks on the Anzac account without objection from plaintiff. He agreed that there was nothing to prevent him from seeing the duplicate deposit slips.

Wilford Fultz had the same opportunity as the plaintiff to examine the journal, the statements and the deposit slips, but never did.

Mrs. McCoy wrote the checks but plaintiff signed all checks.

Plaintiff's cause of action grew out of the alleged breach of the Bank of its contractual duty to plaintiff in the handling of plaintiff's deposit account.

Plaintiff says, "More precisely, the inquiry is whether, under the peculiar facts of this case, the plaintiff owed the bank a duty to examine the duplicate deposit receipts and/ or other records not furnished by the bank to discover whether the bank deposited to plaintiff's account the full amount of all checks presented and restrictively endorsed for deposit only."

■ The law is well settled that there is a duty on a depositor to use reasonable care in examining his statement of account and canceled checks and to report errors to

the bank with reasonable promptness. 8 Tex.Jur.2d 457, § 273; Southwest Nat. Bank of Dallas v. H. F. Underwood & Co., 120 Tex. 83, 36 S.W.2d 141 (1931). The reasons for imposing this duty on depositors are to provide the bank an early opportunity to recoup the loss from the wrongdoer and to prevent the bank from being misled into paying out money on forged or otherwise improper checks.

We find no Texas cases dealing with "less cash" situations as in the instant case.

The out of state cases of Mattison-Greenlee Service Corp. v. Culhane, 103 F.2d 608 (7th Cir. 1939); McKenzie & Mouk, Inc. v. Ouachita Nat. Bank, 159 So.2d 304 (La. Ct.App., 2nd Cir., 1963), are somewhat favorable to defendant's position, while Rudisill Soil Pipe Co. v. First National Bank of Anniston, 224 Ala. 436, 140 So. 569 (1932), largely supports plaintiff's position.

Because of differing fact situations we do not consider any of said cases authoritative of the situation confronting us in the instant case.

As pointed out by defendant, the plaintiff could have detected the wrongdoing of his employee Mrs. McCoy at any time during the approximately 3 year period by merely looking at the deposit slips, by making an examination of the deposits shown on his statement and comparing these amounts with those shown on his Anzac books of account, or a comparison of the total amount of counter checks written by Wilford and enclosed in the monthly statements with the check stubs would have disclosed the fraud.

In Atlas Metal Works v. Republic Nat. Bank, 176 S.W.2d 350 (Fort Worth Civ. App., 1943, ref. w. m.), it is stated: "But an examination of the statements and a comparison of the statements with the plaintiff's books would at once have revealed that something was irregular about the account."

Although the case of Weinstein v. National Bank of Jefferson, 69 Tex. 38, 6 S.W. 171 (1887), involves forgery, we think the law announced by the court is applicable to the instant case, towit: "The object of the statement of the account in the pass-book, and its return with the checks, is to apprise the depositor of the full state of his account as shown by the books of the bank, to the end that he may verify it if it be correct, or detect its errors if it be found erroneous. The banker impliedly says to the depositor: 'This is my account. Examine it, and, if not found correct, report to me its inaccuracies.' And should the latter fail to complain within a reasonable time, the banker would have the right to consider that there was no objection to it. By his failure to speak in proper time, he virtually admits the correctness of the items charged. It is now held that an estoppel may be created, not only when the party sought to be concluded knows the material facts he is charged with having represented or concealed, but also when he is 'in such position that he ought to have known them, so that knowledge will be imputed to him.' 2 Pom.Eq.Jur. § 809. Here it is the duty of the depositor to know whether the account is correct or not, and, promptly to report a forgery when detected. Should he negligently fail to make the examination and consequent discovery, (when he could have discovered it,) it is as if he had expressly admitted the genuineness of the checks, and he will not be permitted to deny the fact, provided the bank be prejudiced by his failure."

In view of all the evidence we have concluded there was some evidence of negligence on the part of plaintiff and under authority of Weinstein v. National Bank of Jefferson, supra; Atlas Metal Works v. Republic Nat. Bank, supra; Southwest Nat. Bank of Dallas v. H. F. Underwood & Co., 120 Tex. 83, 36 S.W.2d 141; Fifth Nat. Bank of San Antonio v. Iron City Nat. Bank of Llano, 92 Tex. 436, 49 S.W. 368 (1899), defendant's defense of negligence on the part of plaintiff should be, with appropriate issues and instructions, submitted to the jury or determined by the trier of facts.

We also sustain defendant's point that a genuine issue of fact existed as to whether Wilford Fultz, plaintiff's son, received all or part of the "less cash" withdrawals from Mrs. McCoy. Wilford was either a partner or joint owner with plaintiff. If he did receive the money plaintiff would not be entitled to recover from the Bank even though Mrs. McCoy was not authorized to withhold money when making deposits. Heusinger Hardware Co. v. First National Bank, 367 S.W.2d 710 (Eastland Civ.App., 1963, ref., n. r. e.).

The defendant's tellers testified that sometimes when presenting a deposit slip with a "less cash" notation Mrs. McCoy would say Wilford needs money for traveling expenses or Wilford needs some expense money. Mrs. McCoy told an Internal Revenue Agent that she gave the money to Wilford; she also told an auditor the money was for Wilford. In her deposition she admitted she so told the Revenue Agent and the auditor. Her reason, she said, was to try to conceal her defalcation. She further testified Wilford got none of the money and did not know of her scheme. Mrs. McCoy and Wilford worked together before Wilford joined his father. He recommended Mrs. McCoy to his father. After her employment was terminated she gave Wilford's name as a reference to prospective employers.

The trier of facts on the merits would probably find that Wilford got none of the money and knew nothing of the defalcation of Mrs. McCoy. Indeed, a contrary finding, under the present state of the evidence, might well be held to be against the great preponderance of the evidence.

In a summary proceeding, however, the trial judge cannot make a finding on contradictory evidence, or decide the credibility of a witness. Where the testimony of a witness is contradictory the judge must take it as he finds it and cannot judge the credibility of a witness to the extent of finding that some of his or her testimony was true and some untrue as he could in a trial on the merits.

Defendant has other points of error, but all, except the points on plaintiff's alleged negligence and on the issue as to whether Wilford Fultz received any of the money, are overruled.

Reversed and remanded.