Plaintiff sues to recover judgment against the Great Southern Air Conditioning Company of Shreveport, Louisiana, allegedly a commercial co-partnership, composed of Frank A. Castille and Andrew M. Neelley, and against said alleged partners in solido for the sum of $361.13, the net price of two gas furnaces, accessories and equipment, hereinafter referred to as units. Evidently anticipating that Neelley would resist the suit on the ground that he was not a partner nor had any financial interest, as such, in the company, plaintiff by supplemental petition, alleged that Neelley held himself out as a partner, signed financial statements so declaring, etc., and that acting upon the faith of these acts on his part, plaintiff extended credit to the company.
Defendants deny that Neelley is or ever has been a partner of Castille in the defendant company but aver that said company since its creation has been solely owned by Castille. They deny owing plaintiff any amount but admit purchase of the units and sale thereof by them. They aver that the units were defective in many respects; did not function for the purpose for which purchased; were grossly misrepresented by plaintiff's agent and were affected with vices of redhibitory character. They specifically charge that the units were represented by plaintiff as being designed to satisfactorily use butane gas but that, notwithstanding repeated efforts by skilled workmen, the units have not functioned as they should have. They allege that $312 was necessarily expended in the effort to procure satisfactory service from the units. The sales of the units, for said reasons, it is averred, should be annulled and set aside.
Defendants reconvened and sue for judgment for said $312 "if it is found that a partnership exists between the parties hereto". In the alternative, they pray for reduction of the purchase price of the units in the event the court should find and hold that the sales thereof should not be entirely rescinded and set aside on account of redhibitory vices. No specific amount of reduction is alleged or prayed for.
As against the demand for rescission of the sales, plaintiff tendered pleas of estoppel and prescription of one year established by Article 2534 of the Civil Code, and to the reconventional demand they excepted on the ground that it disclosed neither a right nor a cause of action. The plea of estoppel is based upon the admitted fact that no tender of the units had been made to plaintiff. The pleas and exceptions were referred to the merits.
There was judgment for plaintiff against the Great Southern Air Conditioning Company and Castille in solido for $171.90. Its demand against Neelley was rejected. There was judgment in favor of the Great Southern Air Conditioning Company and Castille in reconvention for the sum of $112.75, but in other respects their demand was rejected. Each side was cast for one-half of the costs. Plaintiff appealed. Defendants are satisfied with the judgment.
The net price of the unit No. 1 was $171.90. It was sold to defendant Neelley and installed in his home in the City of Shreveport. Notwithstanding the allegations of the answer are to the effect that both units were defective and did not function for the purpose for which purchased, the record is practically barren of any testimony to support this defense as regards unit No. 1. Evidently the trial judge reached this conclusion; hence he gave judgment for the price of this unit. We fully agree with the court's action on this phase of the case. Therefore, unit No. 1 needs no further discussion herein.
Long prior to the filing of this suit unit No. 2 was delivered to defendants' purchaser and installed in his home; in fact, the unit at defendants' request was not shipped to Shreveport, but to Benton, Louisiana, the residence of the purchaser thereof. This occurred about the first of February, 1940. These facts being true, the sale to defendants cannot now be rescinded because of redhibitory vices if such ever existed. Restoration of the status quo ante, it is obvious, is legally impossible. Ehrlich et al. v. Roby Motors Company, Inc., 166 La. 557, 117 So. 590. This *Page 142 
ruling disposes of the pleas of prescription and estoppel.
And as it is not contended or shown that defendants had to accept a price for this unit (in order to sell the same) less than that paid therefor, they are without right to demand reduction of the price due plaintiff; and, further, it is not shown nor intimated that the purchaser of the unit had made any such demands upon defendants. Mr. Castille testified that this unit, at the time of trial and prior, was functioning satisfactorily.
The exceptions of no cause and no right of action filed by plaintiff are not well founded. Counsel says that it is predicated upon the absence from the reconventional demand of any specific averment describing the exact vice or defect in the unit; and, further, that "as to the cost of installation of the gas furnaces that it was necessary for defendants to allege and prove that plaintiff was put in default." Defendants make no claim for cost of installing the units. It is not necessary to the disclosure of a cause or right of action in a redhibitory case to allege that the article purchased failed to function because of any specific defect. It is only necessary to allege that the property failed to function for the purposes for which purchased. This has been repeatedly held by this and other courts of the state. Crawford v. Abbott Automobile Company, Ltd.,157 La. 59, 101 So. 871. It ofttimes happens that the purchaser does not know specifically, and therefore cannot allege exactly, the cause why the purchased article fails to function as represented. He knows if it fails to adequately function.
The foregoing conclusions leave for disposition two questions, to-wit:
The amount of credit, if any, due to defendants on account of alleged outlays to procure satisfactory service from unit No. 2, and whether or not Neelley is legally bound with Castille for the amount due plaintiff on account.
The record, despite pleadings in part to the contrary, discloses that the unit purchased in December, 1939, referred to above as unit No. 1, was designed to consume natural gas, not butane gas. Defendants wanted this sort of furnace.
Unit No. 2 was designed to use natural gas but was altered so as to use butane gas and was sold to a customer residing some sixteen miles from the City of Shreveport, defendants' domicile, who desired a furnace that would use butane gas. Defendants had discussed the unit with plaintiff's agent who made the Shreveport area occasionally and were assured by him that this unit would operate satisfactorily on butane gas.
On January 25th plaintiff wrote defendants that its factory superintendent had informed it that butane gas could not be used in said unit, and on January 26th Castille wrote plaintiff regretfully on the subject, advising that ducts had been built for the unit and necessary steps taken looking to its installation. He said therein: "Please advise us immediately what can be done to rectify this condition, also what type unit can be substituted, as your letter has placed us in a bad predicament."
This was followed by some telegrams between the parties. Plaintiff decided to make a test of the unit to ascertain if it could be adjusted to consume butane gas. Defendants were advised after the test was made that it was successful and the unit was promptly shipped as requested.
On January 31st plaintiff wrote defendants advising that through error the "drip humidifier" had not been removed from the unit. It was also said therein: "We are, therefore, sending under separate cover the patches necessary to blank the opening in the casing left for the Humidifier, and ask that you return same so that we may allow you credit for it."
The unit did not give satisfactory service. Defendants procured the services of a local butane gas distributor in Shreveport, who, after inspecting the unit, advised defendants that several changes should be made to insure proper functioning. This was communicated to plaintiff, who thereafter sent two special burners which were supposed to remedy all shortcomings, but they did not do so. The local butane expert said that the orifices of the new burners were too large. This was in September, 1940. This local agent continued to adjust and give attention to the unit until it did give satisfactory service.
It appears quite certain that the failure of the unit to adequately function was due to the fact that alterations necessary and proper to convert it from the use of natural gas to butane gas were not made before it was shipped to defendants.
Defendants' purchaser continued to call upon them for aid, as the unit failed to operate. *Page 143 
Time after time workmen were sent up to look over the unit and endeavor to correct its deficiencies but their efforts accomplished nothing permanent.
Defendants claim that they expended for labor, material, etc., in their efforts to remedy the defects in the unit, the sum of $199.25 for the period from February 8, 1940, to February 20, 1941. In addition, Mr. Castille testified that the butane expert was due $112.75 for his services. This had not been paid. These two items make up the $312 for which defendants sue.
No one testified in defendants' behalf save Mr. Castille. He did not support his testimony by any bills, checks or receipts. In several respects his testimony is evasive and unsatisfactory. It is argued by plaintiff's counsel that his testimony as to amounts expended or for which he and his company are obligated to pay should not be accepted at its face value. A letter written by Mr. Castille to plaintiff on April 11, 1940, is specifically stressed as supporting the contention that the defense is untrue. This letter is a reply to one from plaintiff insisting upon payment of the account. Castille, writing for his company, in this letter apologized for not replying more promptly to plaintiff's letters and promised to pay the account (amounts sued for) as soon as some collections from F.H.A. projects were in hand. At the date of this letter, according to list of expenditures offered in evidence and verified by Castille's testimony, there had been spent by defendants on the unit $127.25. If this is true, it is argued, why was not mention thereof made in this letter and urged as an offset on the account?
The first complaint about the unit, according to letters in the record, occurred in May, 1940. Letters introduced in evidence unquestionably prove that the unit was not giving near satisfactory service at that time and prior, and that considerable effort extending over several months to have it do so had been put forth. Naturally, the purchaser of the unit was complaining and naturally defendants were trying to allay his dissatisfaction. Why defendants omitted reference to this situation in the letter of April 11th is not explained. However, the greater part of the expense was incurred after that date. This amounts to $184.75, whereas the net price of the unit was $189.23. Evidently the total of expenses equals the price of the unit.
All things considered, we think that defendants, unless reimbursed the expenses above discussed, should not pay for this unit. Equity, as well as law, is strongly on their side. The expenses incurred by defendants to bring the unit to efficient functioning are legitimate charges against the price that they owe. We do not understand that plaintiff challenges the correctness of this conclusion. Under the warranty to their purchaser the obligation rested upon defendants to do as they did. These expenses offset the price. Really it may be said that they amount to damages resulting from breach of warranty by plaintiff.
The facts of the case warrant holding Neelley responsible in solido with Castille and their company for the price of the units.
Defendant company was a quickly created concern. Apparently Castille had little or no capital. This was furnished by Neelley, who, at the time, appears to have been in good financial condition. The business was managed by Castille. He signed all correspondence as "General Manager."
Prior to purchase of the two units, a financial statement reflecting the company's condition was furnished the commercial agency of Dun Bradstreet, Inc. It was made up and signed by Mr. Neelley on a blank form for the purpose provided by the agency. It is said therein that the company was composed of A.M. Neelley and F.A. Castille, as partners. Assets were given as follows:
Cash on Hand Cash in Bank $ 1,000.00 Accounts Receivable (less reserves) Notes Receivable (less reserves) Merchandise 3,000.00 A.M.N. Personal Cash 12,000.00 ----------- Total Current Assets 16,000.00 Machinery and Fixtures 500.00 Real Estate and Buildings 12,500.00 Investments (Itemize) A.M.N. 40,000.00 A.M.N. Investment in Stopmoor — Shreveport, La. 33,000.00 ----------- Total Assets $102,000.00
This financial statement was unquestionably made up and signed as a means of procuring credit. It effectuated that purpose. *Page 144 
Plaintiff was provided with a copy of it and on the faith thereof extended credit to the partnership.
Castille testified that at no time was Neelley a partner with him. He explained that Neelley's only connection with the business was in a financial way, the provider of operating capital. This may be true as between Neelley and Castille, but a different effect is produced as regards third persons when it is shown that Neelley, to their knowledge, held himself out as a partner although in fact he may not have been one. He is estopped, as regards third persons, from gainsaying a status he voluntarily sought to have others believe existed. This principle is tersely but cogently expressed in the syllabus (No. 2) of the case of Triangle Machine Co., Inc., v. Dutton Adams et al., decided by this court and reported in 13 La.App. 14, 127 So. 54. It reads: "A person who acts in such a manner as to induce others to believe that he is a member of a certain partnership makes himself liable to them as a partner."
Neelley did not testify in the case. Prior to trial, because of mental derangement, he was committed to a hospital for the insane. He was interdicted by the court and his curator was substituted as defendant in this case.
The testimony of plaintiff's officers was taken under the provision of Act No. 143 of 1934. Defendants objected to the reception of the depositions of these witnesses on the ground that whereas the notice served on them fixed November 16, 1941, as the date the depositions would be taken, the depositions were, in fact, taken on November 17th; and further, that the depositions were not actually signed by the witnesses until April 10th, thereafter. It is explained, as was true, that November 16, 1941, was a Sunday. The officer designated to take the depositions, of course, could not do so on that date. Defendants made no appearance on either date before said officer. The witnesses were not cross-examined. Why the depositions were not signed by the witnesses until after the lapse of nearly five months is not explained. However, section 5 of the Act does not limit the time within which a deposition shall be signed. It directs that same be signed by the witness after being transcribed if taken by a stenographer. The depositions were taken by a stenographer in the presence of and under the supervision of the notary public designated to do so and thereafter were transcribed and signed by the witnesses.
Defendants have not alleged nor shown that they have been prejudiced to any extent because the testimony was not taken on November 16th nor signed by the witnesses until April 10th. Had they or their counsel gone to St. Louis to be present at the taking of the depositions on November 16th, and were unable to be present on November 17th, it could be said that they would be prejudiced by the admission of the depositions, but as such was not the case, we see no reason why the depositions should not have been admitted as was done.
Therefore, for the reasons herein assigned, it is ordered, adjudged and decreed that plaintiff, American Furnace Company, Inc., do have and recover judgment in solido against defendants, Great Southern Air Conditioning Company, Frank A. Castille and John B. Hussey as curator of Andrew M. Neelley, for $361.13 with five per cent per annum interest thereon from February 12, 1940, until paid.
It is further ordered, adjudged and decreed that defendants on their reconventional demand have and recover judgment against plaintiff in the sum of $189.23, with five per cent per annum interest from February 12, 1940. This judgment pro tanto shall operate as set off to that in plaintiff's favor.
It is further ordered, adjudged and decreed that in all other respects the demands of plaintiff and defendants be and they are hereby rejected.
And except as amended hereby, the judgments of the lower court are affirmed. Each side is cast for one-half of costs.
HARDY, J., is recused. *Page 145