83 So.2d 682 (1955)
HAMMOND FINANCE CO., Plaintiff and Appellee,
v.
John S. CARTER and H. A. McDonald, Defendants and Appellants.
No. 4076.
Court of Appeal of Louisiana, First Circuit.
November 22, 1955.
*683 Ponder & Ponder, Amite, for appellants.
Henry A. Mentz, Jr., Hammond, for appellee.
TATE, Judge.
This suit upon a promissory note is against the maker, John S. Carter, and the endorser, H. A. McDonald, of this note, which was secured by chattel mortgage for the purchase price of two trucks and a trailer described therein.
The District Judge allowed judgment for plaintiff's as prayed, except that it disallowed an item of $61.02 claimed as additional interest on advances made by the plaintiff to the defendants.
The principal defense is that a 1946 Ford described in the chattel mortgage securing the note was repossessed by plaintiff finance company and sold without judicial appraisement; that therefore the plaintiff holder is not entitled to a deficiency judgment under the Deficiency Judgment Act, LSA-R.S. 13:4106, as amended by Act No. 20 of 1952.[1]
*684 This Act has been held to prohibit a deficiency judgment when the mortgagor surrenders the mortgaged property to the mortgagee by private as well as judicial sale, "which of course, is always affected without the benefit of appraisement", Futch v. Gregory, La.App., 40 So.2d 830, 832; see Soileau v. Pitre, La.App. 1 Cir., 79 So. 2d 628 and cases cited therein.
The basis for this contention on the part of defendants is that on March 28, 1953, defendant McDonald sold a 1946 Ford (one of the three items described in the mortgage) to a third party named Ramsey, after securing plaintiff finance company's agreement to release the mortgage upon said truck, in return for which the consideration of $200 (the sales price to be paid by Ramsey to defendants) was applied to the mortgage note. The District Court apparently found that this is a bona fide sale from defendant McDonald to Ramsey, rather than a surrender of the vehicle to plaintiff mortgagee and a resale by the mortgagee to Ramsey; and although the evidence as to this is somewhat conflicting, we do not find the holding of the District Court in this regard manifestly erroneous.
The fact that Ramsey's title certificate showed the sale to be from the plaintiff finance company to Ramsey (rather than from defendants) is adequately explained in the record. The finance company had been unable to secure any title certificate even in its own name until long after the original sale by it to defendant Carter. In order to take an administrative short-cut, after the re-sale to Ramsey, the finance company and Ramsey simply applied for the title certificate recognizing plaintiff's mortgage (it advanced the money to Ramsey for the sale), rather than first applying for a motor vehicle certificate to defendant Carter and then having same transferred to Ramsey. Documents issued pursuant to the administrative provisions for registration of transactions pertaining to motor vehicles are evidentiary as to the transactions concerned, but do not determine in the face of sworn testimony to the contrary found credible by the District Court what actual transaction occurred, see Hamner v. Domingue, La.App. 1 Cir., 82 So.2d 105.
Perhaps a different situation would be presented to us if rather than a sale of one of three mortgaged items from defendant McDonald to Ramsey, with defendant simply agreeing to release its mortgage against the property affected and making a collateral agreement with Ramsey to finance his purchase of the truck, a situation was indicated where the mortgagee finance company had actively participated in the sale by suggesting it, securing a purchaser, securing agreement as to the price, etc., in short, indicated a scheme to circumvent the provisions of the Deficiency Judgment Act, by forcing the mortgagor to sell the property to a third party. Or perhaps a different legal intention or effect would result if the single item subject to a mortgage were sold to a third party and the proceeds credited to a mortgage, which was extinguished by release of that property.
*685 But in view of the findings which we accept that the sole function of the mortgagee herein insofar as the mortgagor was concerned was to release one of the three mortgaged articles from the chattel mortgage, in return for receipt of all or a portion of a purchase price agreed on independently by a mortgagor and a third party, we do not feel that the present instance is a situation affected by the public policy expressed in the Deficiency Judgment Act.
If the simple action of the mortgagee creditor in accepting a portion of the purchase price of a sale of one of several mortgaged articles made by a mortgagor to a third party, and releasing the mortgage insofar as the property sold to the third party was concerned, justified application of the Deficiency Judgment Act, the several items of property included in a single mortgage or chattel mortgage would be effectively removed from commerce. In many instances another mortgage could not be executed to preserve the security as to the unaffected items of the original mortgage, as where subsequent liens or privileges (e.g., a lessor's privilege, a second chattel mortgage, etc.) now affected the property, since the first mortgagor would thus lose his preferred status.
For these reasons, we believe the District Court correctly felt that the Deficiency Judgment Act did not apply in this instance.
Plaintiff holder advanced on behalf of the owners of the truck the sum of $564.85 for licenses, motor repairs, etc. The mortgage instrument did not permit the mortgages to add such advances to the mortgage indebtedness (although it did permit addition of advances for insurance). Therefore such advances are to be construed as an open account indebtedness.
The able District Court held that the plaintiff holder was entitled to impute the payments made on behalf of defendants (in the total amount of $886.83) to first extinguish these open account advances, before applying same to the mortgage indebtedness. In this respect, we believe the District Court erred. Article 2166, LSA-Civil Code, provides that in the absence of specific imputation by receipt or agreement, then "the payment must be imputed to the debt, which the debtor had at the time most interest in discharging". (Italics ours.) There is no showing of specific imputation herein, and it has been held in such absence, that it is to the interest of the mortgagor to apply payments to a secured debt, rather than to an unsecured debt, Calatex Oil & Gas Co. v. Smith, 175 La. 678, 144 So. 243; New Orleans Insurance Co. v. Tio, 15 La. Ann. 174. For these reasons, the claim of plaintiff herein against defendants, or either of them, for the sum of $564.85 advanced on open account will be non-suited herein. The total amount of payments will be credited to the secured debt.
Defendant Carter, signer of the note and the alleged purchaser of the trucks, complains that the property in question was transferred without his consent, since the evidence indicates that the endorser, McDonald, handled all transactions whatsoever concerning this property. The evidence indicates that Carter, although the signer of the note and alleged purchaser-mortgagor of the property, actually appeared as purchaser on behalf of his father-in-law, McDonald, who had several judgments against him, and who used the property in the course of the latter's business.
Carter testified that he was in the military service at the time of the loan, and returned to his distant military post a few days after the purchase, having turned the vehicles over to McDonald (who was in the logging business) at the time of the purchase. Carter made no protest concerning McDonald's use or transfer of the property nominally in Carter's name. Plaintiff's manager testified that McDonald informed him in Carter's presence at the time of the sale that McDonald and Carter were in partnership in the logging industry, which Carter was unable to recall either to confirm or to deny.
Certainly under these circumstances McDonald had the entire use and control of these vehicles and was clothed with apparent *686 authority to deal with the vehicles as his own, and defendant Carter is estopped from denying McDonald's authority or his own ratification thereof; see Aleman Planting & Mfg. Co. v. Hines, 157 La. 625, 102 So. 815; Curl v. Ruston State Bank, 104 La. 548, 29 So. 234; American Furnace Co. v. Great Southern Air Conditioning Co., La.App., 16 So.2d 140; C. V. Hill & Co. v. Interstate Electric Co., La.App., 196 So. 396.
It may be added that defendant McDonald claimed that the trucks were sold in defective condition because approximately one year after the purchase it was necessary to replace a motor upon this truck which had been used in the interim in McDonald's logging business. Neither the District Court nor ourselves find this defense meretorious.
For the above and foregoing reasons the judgment herein is amended to award plaintiff, Hammond Finance Company, judgment in the sum of $806.07 (face amount of note $1,692.90, less payments proved in the amount of $886.83); plus 8 per cent interest thereon from December 25th, 1952, until paid; plus 25 per cent on the amount of principal and interest as attorney's fees set forth upon the note. Defendants are further taxed with all costs incurred prior to March 22nd, 1955, when they secured an order in forma pauperis to continue in accordance with the provisions of LSA-R.S. 13:4525 et seq. The plaintiff's claim for additional sums advanced to either or both of defendants in the amount of $564.85, is dismissed as of non-suit. As thus amended, the judgment rendered herein is affirmed.
Amended and affirmed.
NOTES
[1] LSA-R.S. 13:4106 provides: "In any case where any mortgagee or other creditor takes advantage of the waiver of appraisement of the debtor and provokes a judicial sale, without the benefit of appraisement, of the encumbered property, whether real or personal, or of both characters, and the proceeds of such sale are insufficient to satisfy the debt for which the property is sold, the debt nevertheless shall stand fully satisfied and discharged, insofar as said debt constitutes a personal obligation against the debtor or debtors, and such mortgagee or other creditor shall not thereafter have the right to proceed against the debtor or any other of his property for such deficiency, in any manner whatsoever, provided, however, that in cases in which such debt or other obligation is secured by the mortgage or pledge of other property either real or personal (in addition to that foreclosed against), then such mortgagee or creditor shall lose no rights under such mortgage or pledge by virtue of a sale without appraisal as set forth above, and such mortgagor or creditor may, concurrently with such foreclosure proceeding, or thereafter, proceed to foreclosure in such mortgage or pledge resting on other property to the same extent as if such sale, without appraisement, had not taken place except that there shall be no right to a deficiency judgment against said debtor."