BOLIN, Judge.
These cases, involving the same facts, parties and issues, were consolidated for trial and appeal. Plaintiff bank sought to foreclose on certain special mortgages and notes which had been signed and executed to plaintiff by Terzia Lumber & Hardware, Inc., F. C. Terzia, Sr., and F. C. Terzia, Jr. Among the notes was a collateral mortgage note for $35,000 signed by F. C. Terzia, Sr., and F. C. Terzia, Jr. The First National Bank of El Dorado, Arkansas, filed an intervention in each case seeking to revoke this latter note and mortgage and to enjoin enforcement of same in preference to the intervenor bank’s subsequent judgment. The foreclosure proceedings were held in abeyance until the trial of the revocatory actions. From judgments in each case in favor of the Inter-venor, the Sterlington Bank appeals.
The principal ground for the revocatory actions is that the Terzias were insolvent at the time the mortgage was granted; that this circumstance was known, or should have been known, by the officers of the plaintiff bank; that the mortgage embraced all remaining property of value belonging to the Terzias; that the mortgage was not granted in the ordinary course of business but for the purpose of securing prior indebtednesses for which the Terzias received no consideration, and, therefore, the mortgage was gratuitous and did not constitute security for further advances to the Terzias as mortgagors.
Plaintiff interposed an exception of no right of action based principally upon its assertion that intervenor held security protecting its debt and that the Terzias were not the principal obligors of the obligation in favor of intervenor. By supplement to this exception it was further contended intervenor’s claim was based upon an Arkansas contract and, accordingly, the Louisiana revocatory action is unavailable to intervenor. Plaintiff also filed a plea of prematurity. The exceptions and plea were referred to the merits.
Answering the intervention, plaintiff asserted the $35,000 collateral note secured by the mortgage was executed and delivered in consideration of plaintiff’s agreement to pay certain obligations amounting to a total principal sum of approximately $14,000 and was given in good faith in the regular course of business. Plaintiff further denied any knowledge of the interest of intervenor or the relationship existing between it and the Terzias, or any indebtedness by the latter to the Arkansas bank.
The record reveals the note and mortgage was executed by defendants to the plaintiff bank on November 4, 1960, payable on demand to themselves and by them endorsed in blank. On February 21, 1961, intervenor obtained judgment against the Terzias and Terzia Wood Products, Inc., in the District Court for Ouachita Parish, which judgment was recorded in said parish on the same date. The present suits were filed by plaintiff on March 13 and April 12, 1961, for the purpose of enforcing certain described mortgages, pledges and continuing guaranty agreement securing indebtedness to plaintiff bank. Plaintiff was *18 permitted to proceed with the enforcement of its mortgages, pledges and guaranty-agreement with the exception of the mortgage under attack, the enforcement of which was suspended by order of the court.
The facts involved in the business operations and banking relations of the Terzias covered a period of some ten years, beginning in 1950, and involved several corporations closely related to the Terzias as individuals. The particular relations which are directly concerned in this litigation began about the year 1957 when the Terzia-Thornton Wood Products, Inc., was organized upon the basis of an agreement between the Terzias and the Crossett Lumber Company. The indebtedness of the corporation, which was financed by the inter-venor bank, was evidenced by a note and mortgage in the principal sum of $59,599.-72, the mortgage being recorded in Louisiana in the parishes of Ouachita, Morehouse and Winn. Contemporaneously, Crossett guaranteed payment of one-half of the indebtedness due and owing the First National Bank of El Dorado by Terzia Wood Products, Inc. The note was in default and was carried in a past due status for a period of some three years until September 1960, at which time approximately $52,-000 remained unpaid. Demand for payment was made and, in October of 1960, intervenor bank was advised the indebtedness could not be paid. Meantime, during the year 1960 three creditors obtained judgments totaling approximately $14,000 against Terzia Lumber & Hardware, Inc. Suspensive appeal bonds in these three suits were signed by Sterlington Bank and after obtaining the mortgage and note in the sum of $35,000 on November 4, 1960, the bank paid these judgments. The mortgage was executed by the Terzias individually and covered their individual property although they received nothing as individuals from the transaction.
The revocatory action is governed by Louisiana Civil Code Article 1969 et seq. In his written reasons for judgment the trial judge found the facts supported the intervenor’s right to revoke the prior mortgage and note executed by defendants to plaintiff.
The court found that the Ter-zias were insolvent at the time of executing the mortgage of November 4, 1960; that officials of plaintiff bank inspected the property of the Terzias, requested an inventory and demanded the $35,000 mortgage on the individual property, all of which indicated the bank had knowledge of the insolvency of the Terzias; that the mortgage was not granted in the ordinary course of business, had no relation to the individual obligations of the Terzias who received nothing therefor. For these reasons, the plaintiffs mortgage was subordinated to intervenor’s judicial mortgage.
The trial court also found that, regardless of whether the mortgage and note from defendants to the El Dorado bank were accepted by intervenor in the state of Arkansas where allegedly no right exists for a revocatory action, the evidence showed that the mortgage and note were drafted and signed in Louisiana and forwarded to The First National Bank of El Dorado, which accepted the mortgage and in turn had it filed and recorded in More-house, Ouachita and Winn Parishes in Louisiana. Prior to the intervention of The First National Bank of El Dorado in these two suits filed by the Sterlington Bank, intervenor had obtained a judgment in Ouachita Parish against Terzia Wood Products, Inc., F. C. Terzia, Sr., and F. C. Terzia, Jr., and had exhausted what was left of the property covered by their mortgage in attempting to collect the amount of the note. The court therefore concluded the Louisiana Law was applicable and overruled the exception.
From our study of the record we are in accord with the findings of the trial court.
Appellant also contends that, under the Louisiana deficiency judgment law (La. R.S. 13:4106 et seq.) and the public policy enunciated therein, the El Dorado bank *19 had no right to intervene because that hank permitted the private sale without appraisement of some of the security for the debt made the basis of its judgment. This claim apparently was not argued in the lower court since the trial judge did not mention same in his written reasons for judgment. We find no merit in this argument. The El Dorado bank never repossessed and sold without benefit of appraisement any property upon which it held a privilege. The hank did release some of its security so the Terzias could sell it to third parties. We do not find this to be prohibited by the deficiency judgment act. Hammond Finance Co. v. Carter (La.App. 1 Cir., 1956) 83 So.2d 682.
For the reasons assigned the judgment in each of the two consolidated cases is affirmed at appellant’s cost.
Affirmed.