465 So.2d 162 (1985)
AMERICAN SECURITY BANK OF VILLE PLATTE, Plaintiff-Appellant,
v.
Raymond DUFOUR, et al., Defendants-Appellees.
No. 84-202.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1985.
*163 Jules R. Ashlock, Ville Platte, for plaintiff-appellant.
Preston N. Aucoin, Gary J. Ortego, Fontenot & Mitchell, Clyde Fontenot, Ville Platte, Dubuisson & Dubuisson, James G. Dubuisson, Opelousas, for defendant-appellee.
Before DOUCET, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
The plaintiff appeals from the dismissal of its suit on a promissory note seeking the recognition of a collateral mortgage. We affirm.
American Security Bank of Ville Platte sued Raymond Dufour and Lillian Dufour on a promissory handnote dated February 20, 1981, payable to the bank in the amount of $127,545.12, claiming a balance of $20,537.35, asking also for recognition of a collateral mortgage dated November 3, 1978, affecting Lot 15 of Kennedy Estates Subdivision in Evangeline Parish, the mortgage, along with a collateral note for $20,000.00 for which it was given as security, having been pledged by the Dufours as security for the handnote. Based on the testimony of Stephen Deville and numerous exhibits, the trial judge concluded that sufficient evidence was present to mandate dismissal of the suit. The trial judge reached this conclusion reasoning that earlier transactions between the bank and the Dufours, which resulted in a reduction of the $127,545.12 handnote from its original amount to $20,537.35, amounted to a private disposition of mortgaged property without appraisement, in violation of the Deficiency Judgment Act, LSA-R.S. 13:4106-7, barring absolutely the bank's present claims. The bank appealed.
Defendant Raymond Dufour (who died shortly after this suit was filed) was a building contractor in Ville Platte, and in the late 1970s, while he was active and successful, he negotiated between ten and fifteen collateral mortgages and between seventy-five and one hundred individual handnotes with American Security Bank of Ville Platte in connection with his business. Most of these transactions were done through Stephen Deville, a lending officer for that bank. On February 20, 1981, there were a number of handnotes still outstanding that were beginning to get past due, so the Dufours signed a handnote for $127,545.12, consolidating all of the notes, using four pieces of collateral to secure the consolidation, three of them collateral mortgages on real estate, and the other a certificate of deposit. One of the collateral mortgages was on Lot 15 of Kennedy Estates. This collateral note and mortgage, and its continued use as collateral by the Dufours even after the property that it covered was presumably sold, figures prominently in this case.
The collateral note and mortgage for $20,000.00, describing Lot 15 of the Kennedy subdivision, was executed and given to the bank on November 3, 1978, the same day the Dufours bought the lot. About six months later, on May 11, 1979, the Dufours sold Lot 5 of that subdivision to Cloveis Lennett, for $30,000.00. The description of Lot 5 was a mistake; the parties intended to convey Lot 15. Lennett, using FHA money, paid Dufour, who in turn paid some other collateral notes due at the bank, but not the note and mortgage on Lot 15. However, on the back of the $30,000.00 check that Dufour endorsed to the bank, under his endorsement was written "Lot 15 Kennedy Estates Sub." Accordingly, as of May 11, 1979, the collateral note and recorded *164 collateral mortgage covering Lot 15 remained outstanding.
On March 5, 1982, the situation stood like this: Dufour still owed the bank most of the consolidation handnote, and the bank held as security for that note three collateral mortgage notes, including the mortgage on Lot 15 of the Kennedy Estates Property, plus a certificate of deposit. Because of Dufour's declining financial situation, he and the bank on March 5, 1982, executed two written agreements. By means of the first document (called an act of exchange but actually a giving in payment), the Dufours conveyed one piece of property (not the subject of any of the collateral mortgages pledged to secure the consolidation note), for a credit of $34,000.00, a part of which was credited against the February 20, 1981, promissory note. After this credit, and taking into account earlier payments on the note, the amount of the balance stood at $70,537.35. By another instrument dated that same day, March 5, 1982, likewise called an act of exchange but likewise being obviously a giving in payment, the Dufours transferred to the bank other property, which the parties agreed was worth $50,000.00, and which was apparently the subject of a collateral mortgage dated March 8, 1979, securing a collateral note in the amount of $60,000.00. This instrument contains the following language:
"As a further condition of this exchange, while reserving unto itself all courses [sic] of action against other mortgaged property, AMERICAN SECURITY BANK OF VILLE PLATTE covenants that it will not proceed against the homeplace of RAYMOND J. DUFOUR and LILLIAN DUFOUR, and AMERICAN SECURITY BANK OF VILLE PLATTE further covenants that it will not execute any judgment it may obtain against either the homeplace of the above named, or against them personally, and that once the mortgaged property against which judgment is obtained is sold, any judgments involving RAYMOND J. DUFOUR and LILLIAN DUFOUR, which are unsatisfied, will be cancelled."
When the credit given by means of this agreement was applied to the consolidation note, it left a balance of $20,537.35.
When these transfers were introduced into evidence, and all of the known facts of the case appeared to be in the record, the trial judge commented he thought the case was ready for decision, because "once a secured creditor takes security without passing it through a public sale, it extinguishes the debt." The trial judge then instructed plaintiff's counsel that he could offer additional evidence but that in his opinion "this stops the case." Plaintiff's counsel stated that he thought the trial judge was correct and did not produce any additional evidence.
In his reasons for judgment the trial court relied on La.R.S. 13:4106 for the proposition that once a creditor accepts mortgaged property without passing it through a public sale, the debt is extinguished for public policy reasons. The appellant on appeal now argues that the trial court erred in dismissing its claim.
La.R.S. 13:4106 states as follows:
"§ 4106. Deficiency judgment prohibited if sale made without appraisement
"If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
"If a mortgage or pledge affects two or more properties, movable, immovable, or both, the judicial sale of any property so affected without appraisement shall not prevent the enforcement of the mortgage *165 or pledge in rem against any other property affected thereby."
Under the jurisprudence it is clear that the stringent public policy provisions of La.R.S. 13:4106 prohibit the rendition of a deficiency judgment in favor of the mortgage creditor where the creditor has provoked a sale, judicial or private, without the benefit of appraisal. Domingues Motors, Inc. v. LaLonde, 417 So.2d 900 (La. App. 3rd Cir.1982). The provisions also prohibit the rendition of a deficiency judgment in favor of the mortgage creditor where the debtor has voluntarily relinquished the property mortgaged to the creditor at his insistance without benefit of appraisement. Orgeron v. Griffin, 230 So.2d 838 (La.App. 1st Cir.1970); Shreveport Auto Finance Corporation v. Harrington, 113 So.2d 476 (La.App. 2nd Cir. 1959).
In Shreveport Auto Finance Corporation, supra, the defendant made a down payment for the purchase of an automobile and gave a promissory note for the balance. The buyer found himself unable to meet his obligation on the note and advised the car dealer that he wished to voluntarily surrender the car and be relieved of the balance due. The car dealer agreed to allow the purchaser to do this but required that he also execute a note for $300 to reimburse the dealer for his loss. Defendant gave the note and signed title to the car. Upon defendant's failure to make payment of the $300 note, suit was instituted by the payee of the note, a finance company. The district court granted judgment in favor of the plaintiff. The appellate court reversed stating that the public policy provisions of La.R.S. 13:4106 applied and that the creditor was prohibited from obtaining a deficiency judgment.
In David Investment Company v. Wright, 89 So.2d 442 (La.App. 1st Cir.1956) the plaintiff filed suit against the defendant to enforce by executory process a promissory note secured by a chattel mortgage on seven cows. Only four of the seven head of cattle were seized and defendant recovered possession of these cattle under bond. Eventually the plaintiff and defendant entered into a stipulation to sell the four cows at a private sale "to have the same effect as if said defendant had produced said cows under her forthcoming bond, and they were sold at public auction by the sheriff." The private sale was conducted without benefit of appraisement. The trial court granted defendant's exception of no cause of action finding that the plaintiff was not entitled to a deficiency judgment since it provoked a private sale without appraisement. The appellate court affirmed this ruling by stating:
"The plaintiff mortgagee had seized a part of the mortgaged property as was its right. It had the legal right to have said property sold at sheriff's sale with proper appraisement. Upon obtaining the amount of the sale price, minus costs incurred, the mortgagee then had the right to obtain a deficiency judgment for the balance then due on the secured debt.
"However, mortgagee, holding the legal rights set forth, consented at mortgagor's insistence to release the cattle seized to the mortgagor in order "to avoid further costs and to secure a better price in the decreasing cattle market."
"Without doubting appellant's argument that in this present instance it was to the benefit of the mortgagor for her to sell the cattle at the public cattle auction barn, in view of the declining market and to save the additional court costs and expense of advertising for a judicial sale, nevertheless under the stringent public policy provisions of the Deficiency Judgment Act as interpreted, a mortgage creditor is absolutely barred from a deficiency judgment where he provokes a sale, judicial or private, without the benefit of appraisement, LSA-R.S. 13:4106, see cases cited Soileau v. Pitre, La.App. 1 Cir., 79 So.2d 628. As we stated therein, 79 So.2d 631: `To enforce the contract entered into by the parties to this suit would, in effect, give the Court's approval to a contract entered into to circumvent the Legislative will and the public policy of this state.'

*166 "Plaintiff-appellant ably urges that the present situation is governed by our recent case of Hammond Finance Co. v. Carter, La.App. 1 Cir., 83 So.2d 682. The crux of our holding there was that `the sole function of the mortgagee herein insofar as the mortgagor was concerned was to release one of the three mortgaged articles from the chattel mortgage, in return for receipt of all or a portion of a purchase price agreed on independently by a mortgagor and a third party,' 83 So.2d 685.1
"But we specifically commented that perhaps a different situation would be presented if `the mortgagee finance company had actively participated in the sale by suggesting it,' etc. 83 So.2d 684. Here the mortgagee's conduct not only promoted or induced the sale, it actually `provoked' it by the judicial seizure, so as to bring the sale squarely under the provisions of the Deficiency Judgment Act. The mortgagee was required to have had an appraisal in advance of the sale, with the sale at a price within the limits set by law with relation to said judicial appraisal, in order to preserve its rights to a deficiency judgment under the circumstances of this case."
The comment from the Hammond case quoted above indicates that where a mortgagee actively participates "in a sale [of one of three mortgaged properties] by suggesting it, securing a purchaser, securing agreement as to price, etc.,in short, indicated a scheme to circumvent the provisions of the Deficiency Judgment Act, by forcing the mortgagor to sell the property..." then the provisions of the act would operate to discharge the debt and prohibit the mortgagee from seeking a deficiency judgment. 83 So.2d 684.
In the present case on March 5, 1982, the Dufours executed a giving in payment which transferred to the bank title to one of the mortgaged properties. There was no appraisement of the property. It is clear from the act that the Dufours agreed to relinquish this property to insure that the bank would not obtain a deficiency judgment and proceed to execute judgment against their homeplace. It is also clear that the bank actively participated in the agreement as to price and other terms, thereby participating in a scheme to circumvent the provisions of the Act. See Hammond, supra. The agreement enabled the bank to secure the property without public sale with benefit of appraisement.
Under these facts and the jurisprudence we find that the stringent public policy provisions of La.R.S. 13:4106 are applicable to this situation and that the mortgagee bank is prohibited from obtaining a deficiency judgment against the defendants.
The plaintiff further argues that the exception in the second paragraph of La. R.S. 13:4106 applies to the present case. We disagree. The second paragraph under La.R.S. 13:4106 provides that if the mortgage or pledge affects two or more properties "the judicial sale of the any property so affected without appraisement shall not prevent the enforcement of the mortgage or pledge in rem against any other property affected thereby." (emphasis ours.)
It is clear under this provision that a judicial sale is required to invoke the provisions of this exception. In the present case the mortgagee bank circumvented the provisions of this Act to avoid the necessity of such procedure. Therefore the bank is precluded by its own actions from seeking the benefit of this exception.
For the reasons above the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.