785 So.2d 255 (2001)
CHRYSLER FINANCIAL COMPANY, L.L.C.
v.
James CLOUTIER.
No. 00-795.
Court of Appeal of Louisiana, Third Circuit.
May 2, 2001.
Rehearing Denied June 6, 2001.
*256 Lee E. Butler, Law Offices of Gregory M. Eaton, Baton Rouge, LA, Counsel for Plaintiff/Appellant Chrysler Financial Company, L.L.C.
Robert P. Fuhrer, Morgan City, LA, Counsel for Defendant/Appellee James Cloutier.
Court composed of YELVERTON, COOKS, AMY, SULLIVAN, and PICKETT, Judges.
COOKS, Judge.
James Cloutier executed a Fixed Value Retail Installment Contract with Chrysler Credit on August 24, 1994, agreeing to lease a 1994 Chrysler LHS. The lease contract required him to pay 35 monthly installments of $474.00 and one Fixed Value Payment of $13, 917.69, due on August 23, 1997the end of the contract term. The contract allowed Cloutier to satisfy the Fixed Value Payment obligation by any of the following:
A. Fixed Value Payment
(1) satisfy the Fixed Value Payment in full by returning the Vehicle to Creditor in accordance with the terms and conditions set forth in paragraph C; or
(2) satisfy the Fixed Value Payment in full in cash and keep the Vehicle; or
(3) satisfy the Fixed Value Payment in full by refinancing the Fixed Value Payment in accordance with the terms and conditions set forth in paragraph B.
. . .
C. Return of Vehicle to Creditor. You have the right to return the Vehicle to Creditor along with the certificate of title to the Vehicle in satisfaction of the Fixed Value payment.
You agree to contact Creditor in writing 30 days prior to the due date of the Fixed Value Payment to arrange a time and place suitable to Creditor for the inspection of the Vehicle....
Excess mileage is that mileage in excess of the total annual miles allowable and as shown on the front of this contract. You agree to pay Creditor an excess mileage charge in the amount of $.10 per mile of excess mileage....
You agree to pay Creditor a disposition charge of $275 if you choose to return the Vehicle in satisfaction of the Fixed Value Payment.
On August 20, 1997, Chrysler Financial informed Cloutier he was two months past due on the lease and owed a late charge in the amount of $233.40. Chrysler demanded payment of the past due amounts, a disposition fee in the amount of $275.00, and the return of the vehicle to satisfy Cloutier's lease obligation. On the same date, Chrysler faxed Cloutier a Bill of Sale (Fixed Value Transaction), a Power of Attorney, along with an Odometer Mileage Certificate. The Bill of Sale indicated the cash value of the vehicle upon termination of the lease was $13,917.69consideration for the transaction. Cloutier signed the Bill of Sale formally returning title of the vehicle to Chrysler on August 21, 1997. Chrysler took possession of the vehicle on September 2, 1997. Cloutier also paid Chrysler the $1932.74 it demanded for the disposition fee, late charge, and past due balance on September 11, 1997, well within the thirty days allowed by Chrysler's agent.
*257 Although it appears in the record Chrysler could have demanded a mileage assessment, Chrysler never invoiced Cloutier nor claimed the amount in the original suit. Defense counsel specifically noted at the outset of trial:
Mr. Fuhrer: I would object to the excess mileage being raised in this matter. The petition does not allege any amounts due for excess mileage.
. . .
The Court: That's not before the Court
. . .
Mr. Eaton: That's correct....
Thus, the mileage issue was never before the court.
The trial judge concluded Cloutier paid Chrysler all it demanded at the close of the lease. He found the vehicle was returned timely, though it was actually towed to Chrysler on September 2, 1997. The Bill of Sale was signed by Cloutier on August 21st, two days before the contract terminated. Although the disposition fee, late charge, and past due balance demanded by Chrysler were late, the trial judge found the contract was modified because of the parties prior dealings. He specifically noted Chrysler's history of accepting late payments from Cloutier and assessing him late fees.
On appeal, Chrysler argues that by referring to the parties prior dealings, the trial judge interjected the defense of forbearance in resolving the case. Forbearance, Chrysler maintains, is an affirmative defense which must be timely pled; the trial judge could not rely upon it in deciding that the contract terms were modified because Cloutier did not raise this defense in the pleadings. Although the trial judge mentioned the prior dealings between the parties, we are satisfied the late payments by Cloutier were a contingency provided for in the contract itself. The contract reads in pertinent part:
Late Charge. If a payment or part thereof is more than 10 days late you will be charged $15.00 or 5% of such unpaid amount whichever is less ...
Chrysler apparently maintains, in assessing late fees and a disposition fee, it did not intend to forego the default remedy granted it in the contract. The contract in relevant part provides:
K. Default. You will be in default if:
(1) you fail to make any payment when due according to the Payment Schedule shown on the front of this contract.
. . .
L. Remedies Upon Default. If you default, Creditor has the right to declare the unpaid portion of the Total of Payments of this contract, together with any other amount for which you have become obligated hereunder, less the unearned portion of the Finance Charge and any insurance or service contract rebates or refunds, to be immediately due and payable, whereupon Creditor is entitled to exercise any remedy or remedies provided in this contract or at law generally.
(1) If the Vehicle is located in the State of Louisiana, Creditor has the right to foreclose under this contract and cause the Vehicle to be immediately seized and sold under ordinary or executory process, with or without appraisal, in accordance with applicable Louisiana law, whether in term of court or in vacation, without the necessity of further demanding payment from you or notifying you or placing you in default. For purposes of foreclosure under Louisiana executory process procedures, you acknowledge to be indebted to Creditor and confess judgment in creditor's favor in the full amount secured hereunder. *258 To the extent permitted under applicable Louisiana law, you additionally waive: (a) the benefit of appraisal as provided in Articles 2332, 2336, 2723, and 2724 of the Louisiana Code of Civil Procedure, and all other laws with regard to appraisal upon judicial sale; (b) the demand and three (3) days delay as provided under Article 2639 and 2721 of the Louisiana Code of Civil Procedure; (c) the notice of seizure as provided under Article 2293 and 2721 of the Louisiana Code of Civil Procedure; (d) three (3) days delay provided under Articles 2331 and 2722 of the Louisiana Code of Civil Procedure; and (e) all other benefits provided under Articles 2331, 2722 and 2723 of the Louisiana Code of Civil Procedure and all other Articles not specifically above. Creditor may appoint a keeper of the Vehicle in the event of foreclosure.
The real issue in this case centers on Chrysler's legal entitlement to the judgment it seeks. Louisiana law does not provide a security holder with the right to engage in self-help. U-Haul Co. of S. Louisiana v. Lumzy, 405 So.2d 1099 (La.App 4 Cir.1981). Although the Legislature has adopted Section 9 of the Uniform Commercial Code, covering secured transactions, this court has not found any special provisions which grant the security interest holder of movable property the right to unilaterally seize and privately sell such property without the consent of the debtor or notice and reasonable opportunity for him to seek legal redress. Even where the Legislature has enacted statutes which allow for private enforcement of certain liens, such as in the Self-Service Storage Act, La.R.S. 9:4796 et seq., it has required strict fair notice requirements and other safeguards to prevent fundamental unfairness in the creditor-debtor relationship.[1]
As a panel of this court noted in First National Bank of Houma v. Bailey, 583 So.2d 559, 563 (La.App. 3 Cir.1991), the Louisiana Deficiency Judgment Act was enacted "to prevent the inequity inherent in a creditor foreclosing on a debtor's property without appraisal, buying the property ... for a low price and thereafter obtaining a personal judgment against the debtor for a greater amount than if the property had been sold pursuant to a valid appraisal." Following enactment of the Act, the courts required strict compliance with its provisions before allowing a creditor to obtain a deficiency judgment. We further noted:
Even an arms length agreement between a creditor and debtor to dispose of collateral was held to contravene the strict public policy of the LDJA. Justice v. Caballero, 393 So.2d 866 (La.App. 4th Cir.1981). The courts held that the debtor himself could not waive the benefits that the Act bestowed upon him. University Properties Corp. [v. Fidelity Nat. Bank, 500 So.2d 888 (La.App. 1 Cir.1986), writ denied, 501 So.2d 762 (La.1987)]. In effect, this paternalistic protection of the debtor prevented his freedom to contract to his benefit. David Investment Company v. Wright, 89 So.2d 442 (La.App. 1st Cir.1956). The creditor was penalized for any leniency towards the debtor when the *259 creditor provoked or participated in a private sale without appraisal even where the debtor himself actively sold the property and benefitted from the sale. Justice v. Caballero, supra; University Properties Corp. at 895-899; American Security Bank of Ville Platte v. Dufour, 465 So.2d 162 (La.App. 3 Cir.1985).
First Nat. Bank of Houma, 583 So.2d at 563. Though La.R.S. 13:4106 was designed to protect debtors, its strict application in practice "disadvantaged" them. As a result, a number of courts carved out jurisprudential exceptions to the statute, "the thrust of [which were to] protect[] the debtor and promote[] leniency by the creditor without the creditor losing his right to a deficiency judgment where all parties are in agreement." Id. Subsequently, the Legislature enacted R.S. 13:4108.1 which prompted this court to comment:
In our view, in enacting R.S. 13:4108.1, the legislature recognized that strict adherence to R.S. 13:4106, without exception whatever, completely deprived the creditor and debtor of any flexibility in debt reduction which often paradoxically operated to the debtor's detriment. Further, we opine that by adopting R.S. 13:4108.1 the legislature intended to codify the jurisprudential exception to the LDJA recognized in, among others, the cited cases where in commercial transactions a creditor can retain his right to a deficiency judgment if the parties, acting in good faith, consensually agree to debt reduction by a method other than public judicial sale preceded by appraisal. In other words, R.S. 13:4108 .1 was not intended by the legislature to supersede the LDJA but only as an exception where the requisite consent of the parties is present. (Emphasis added.)
The statute expressly requires that the parties agree upon the value attributable to the property being sold, whether the collateral is to be disposed of by "judicial, private or public sale, with or without appraisal" or whether the creditor is to acquire the property by "complete or partial dation." Any method of disposing of the collateral is viewed as an acceptable way to reduce the debt if the parties agree to do so and agree upon the reasonable equivalent value of the property. This statute fosters leniency by the creditor who is still entitled to a deficiency judgment however, only in excess of the reasonable value accorded the property, and allows the debtor freedom to contract for beneficial debt reduction.
Once the reasonable equivalent value is agreed upon, by whatever method the encumbered property is disposed of, that amount is credited against the debt, regardless of the proceeds actually obtained. On the other hand, if the parties fail to agree, the creditor is still entitled to foreclose through executory process, however, in such event, the stringent rules prescribed by the LDJA apply. (Emphasis added.)
See First Nat. Bank of Houma, 583 So.2d at 564.
The default provision which Chrysler seeks to enforce specifically states: "If the Vehicle is located in the State of Louisiana, Creditor has the right to foreclose under this contract and cause the Vehicle to be immediately seized and sold under ordinary or executory process, with or without appraisal, in accordance with applicable Louisiana Law. ..." In this instance, Chrysler failed to initiate any judicial proceeding before it sold the vehicle at private auction. The property, thus, was not sold by writ of seizure and sale following an executory proceeding or writ of fi. fa. following *260 an ordinary proceeding. Chrysler, thus, failed to comply with the express terms of the contract; and it cannot rely upon the contract to secure a judgment compelling Cloutier to pay the deficiency it claims.
Chrysler, nonetheless, argues Cloutier voluntarily surrendered his vehicle for private sale. The record contradicts Chrysler's assertion. Chrysler claims it sent Cloutier a Voluntary Surrender/Abandonment Notice and Notice of Sale on September 2, 1997. Cloutier did not acknowledge receiving this document and in fact testified:
Q. When was the first time you saw that document [Voluntary Surrender and Notice of Private Sale].
A. I saw it during this litigation.
Q. Prior to suit being filed did you ever see the document or the original or a copy of that document from Chrysler.
A. No, sir, never.
Cloutier also testified the address to which Chrysler claims it sent the document was not his mailing address. Cloutier, for certain, did not sign the document. Despite its failure to secure Cloutier's consent to the sale, Chrysler maintains the contract did not require it to give him notice or place him in default and it could unilaterally decide to sell the car at a private sale. The only provision in the contract which mentions private sale of the vehicle appears in paragraph L. and reads as follows:
(2) Should the Vehicle for any reason be located in another state at or following any default under this contract, or to the extent then permitted under Louisiana law, Creditor may take possession of the Vehicle in any manner then permitted under the laws of the state where the Vehicle is located. Creditor, its agent or representative may enter upon the premises where the Vehicle may be and take immediate possession of the Vehicle, including any equipment or accessories. Should Creditor for any reason have or acquire possession of the Vehicle at or following default, you will have the right to redeem the Vehicle. If you do not redeem, Creditor may sell the Vehicle at public auction or private sale as authorized by Louisiana law or the applicable provisions of the Uniform Commercial Code in effect in the state where the Vehicle is then located. If Creditor is required by law to give you notice of the public or private sale of the Vehicle, you agree that the requirements of reasonable notice shall be met if Creditor mails such a notice to you at your last address appearing in Creditor's records at least ten (10) days before the time of the sale or disposition.
(Emphasis added.)
This provision is not applicable, in this instance, becauseat all pertinent times the vehicle was located in the State of Louisiana.
The contract's default provision specifically required that Chrysler comply with Louisiana law; and the parties were barred from derogating from it contractually or otherwise. Chrysler cannot avoid compliance with the Louisiana Deficiency Judgment Act simply by petitioning the court to enforce what it styled as a "Retail Installment Contract." Chrysler's suit is nothing more than an action seeking a deficiency judgment. Without Cloutier's consent to the sale and an agreement upon the price of the collateral[2], Chrysler was *261 required to initiate either executory or ordinary process. Chrysler did not do so and it cannot secure the judgment it seeks in this proceeding.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against defendant-appellant.
AFFIRMED.
PICKETT, dissents and assigns reasons.
AMY, J., dissents for the reasons assigned by Judge PICKETT.

DISSENT
PICKETT, J., dissenting.
I respectfully dissent. The defendant argues, and the majority agrees, that he satisfied the terms of the contract by paying the amount of $1,932.74 and surrendering the vehicle. The defendant argues this payment, which included three past-due rentals, a late charge of $233.40, and a disposition fee of $275.00, along with the surrender of the vehicle, satisfied his obligation under Paragraph A(1). I find this argument to be misplaced.
At the time this payment and the surrender were made, the defendant had already defaulted under the provisions of Paragraph A(1). They no longer applied to him. To have satisfied the contract under that section, and have satisfied the fixed value payment by return of the vehicle, he was required to surrender the vehicle and pay fees of $5,909.54 (which would have included back due payments, penalties, disposition fee, and excess mileage) on or before August 23, 1997. He did not do that.
The defendant not only failed to pay the fees due, he also failed to conform to the provisions of the contract as it related to return of the vehicle under Paragraph A(1). He did not contact the creditor as required to arrange for inspection of the vehicle to determine excess mileage and/or excess wear and tear. He did not return the vehicle to Chrysler by August 23, 1997. Chrysler had, in fact, sent him notice, prior to the due date, of the deadline for returning the vehicle and the method of computing the balance he would owe.
It is my opinion that the defendant having defaulted under the clear terms of Paragraph A(1) lost his right to return the vehicle under that particular portion of the contract. It no longer applied to him because he failed to act in accordance with the terms of the contract.
Mr. Cloutier argues, in brief, the affirmative defense of forbearance. It is clearly the legal theory upon which the trial court based its ruling. The affirmative defense of forbearance, however, was never pled at the trial level.
In rendering its decision the trial court stated:
So the court finds that the contract was modified by the history between the parties of accepting and paying late payments, and that even though Mr. Cloutier made the payment due late on September 11, he had consistently made late payments, and therefore, he satisfied his obligation to Chrysler.
An affirmative defense is one which will have the effect of defeating a suit on the merits. La.Code Civ. P. art. 1005 specifies that the answer shall set forth any and all affirmative defenses claimed by a party. "Forbearance" is nothing more than a tacit promise not to sue or estoppel to sue and must be regarded as an affirmative defense. *262 First National Bank v. Higgs, 406 So.2d 673 (La.App. 2 Cir.1981). Pleadings may be enlarged to include an affirmative defense not specifically pleaded where the evidence supporting the defense is introduced without objection. Edwards v. Edwards, 282 So.2d 858 (La.App. 1 Cir.1973).
In the matter before us, the plaintiff never had an opportunity to object because the evidence was closed at the time the court ruled. This affirmative defense was never pled by the defendant. Evidence was never taken on this issue. The trial court improperly supplied it as a defense after the close of the evidence and then relied upon it in ruling in the defendant's favor. Plaintiff filed a motion for new trial to no avail.
I respectfully submit the trial court erred in it's determination, based upon an unpled affirmative defense and further submit the defendant defaulted under the clear provisions of the contract between the parties. I would reverse the ruling of the trial court and render judgment in favor of the plaintiff.
For these reasons I respectfully dissent.
NOTES
[1] The Self-Service Storage Act requires notice by delivery or certified mail to the defaulting debtor that the owner-lessor has taken possession of the property subject to the lien created by the Act. The debtor is then given a reasonable period after notice to seek judicial protection if the debt is not in default or if there are other defects in the owner-lessor's claim. Moreover, the Act presents no obstacle to the debtor's recovery of damages caused by wrongful seizure and sale.
[2] Although Cloutier signed the title and the bill of sale forwarded to him by Chrysler recited $13,917.69 as the value of the vehicle, Chrysler insisted at trial it did not agree upon this price. Chrysler was required if it agreed upon the price to credit the amount against Cloutier debt, "regardless of the proceeds actually obtained" at the private sale. First Nat. Bank of Houma, 583 So.2d 559, 564 (La.App. 3 Cir.1991).